CITY OF TAMPA, A MUNICIPAL CORPORATION, *Appellant*, v. RUBY B. PALMER AND THOMAS PALMER, HER HUSBAND, *Appellees*.

Division B.

Opinion Filed June 8, 1925.

Petition for rehearing denied July 15, 1925.

1. The good faith of tax officers and the validity of their official actions are presumed; and when assailed, the burden of proof is upon the complaining party.

2. Mere irregularity alone in the assessment or collection of taxes is not usually a ground for equitable relief against collection of the tax. The word, "irregularity" as here used.

however, is not synonymous with either the words "illegal" or "unlawful", and contemplates only *bona fide* and unintentional mistakes on the part of ministerial or administrative officers in the performance of their duties, and does not extend to or embrace instances where essential provisions of law have been violated or ignored.

3. The law contemplates that a wide discretion be accorded to the tax assessor in the valuation of property for purposes of taxation. In the absence of a clear and positive showing of fraud or of an illegal act or of an abuse of discretion rendering an assessment authorized by law so arbitrary or discriminating as to amount to a fraud upon a tax payer, or to a denial of the equal protection of the law, the court will not in general control the *discretion* of the tax assessor in making valuations for purposes of taxation.

4. Where a tax assessor, in fixing valuations for purposes of taxation, arbitrarily, systematically and intentionally follows a method of excessive valuation, without reference to actual or relative values; or where the valuation is determined in an arbitrary and illegal manner resulting in an unjust and excessive valuation amounting to a fraud upon the rights of the tax payer; or where there has been a violation of or omission to follow the mandatory requirements of law; or where the valuation is so palpably excessive and unjust as of itself to amount to a denial of the equal protection of the law or a denial of due process, equity will usually take jurisdiction and grant appropriate relief in proper cases against an excessive tax so levied, even though the proceedings authorized by law for seeking relief from administrative officers were not utilized. Equity takes jurisdiction in such cases, not for the purpose of controlling the *bona fide* exercise of the administrative discretion vested in the tax assessor, but to prevent the fraud resulting from the intentional abuse of that discretion.

5. The fixing of a valuation upon property by a tax assessor for purposes of taxation, and the equalization thereof by a board of equalization, are administrative acts, involving the exercise of administrative discretion, and a court of equity will

# 516   SUPREME COURT OF FLORIDA.

not in general control that discretion unless it is illegally or fraudulently exercised, or is exerted in such manner or under such circumstances as will amount in law to a fraud.

6. Mere inadvertence, or a *bona fide* mistake of judgment in fixing a valuation for purposes of taxation does not, in itself, amount in law to a fraud, and relief will not be granted by courts of equity *solely* upon the ground that the valuation is excessive, unless such valuation is so obviously and flagrantly excessive as to amount in law to a fraud and clearly imputes to the tax assessor an *intention* to arbitrarily discriminate against the complaining tax payer.

7. In instances of complaints founded *solely* upon a claim of excessive valuation resulting from a *bona fide* but mistaken, exercise of judgment by the tax assessor, and unaffected by any obvious and palpable abuse of discretion or other element of illegality in matter of law, the remedy of the tax payer is before the administrative body provided for the equalization of valuations and assessments.

8. In order for equity to take jurisdiction and grant relief against an *advalorem* tax imposed upon real property, the case must be brought within some recognized principle of equity jurisdiction. A claim of excessive valuation alone, resulting *solely* from a *bona fide*, but mistaken exercise of judgment, the validity of the tax being affected by no other element of illegality in matter of law, and there being no intentional or other disregard of law or abuse of authority, will not suffice as a ground of equitable jurisdiction, unless the valuation is so flagrantly and obviously excessive as, within itself, to amount to a fraud and clearly imputes to the tax assessor an *intention* to arbitrarily discriminate against the complaining tax payer.

9. An illegal assessment, that is, an assessment wherein, independent of the exercise of a discretion as to value, there appears prejudicial and material error in *matter of law*, will usually constitute grounds for equitable interference.

10. Where the valuation placed upon property by the tax assessor is in fact excessive, the presumption is that the board of equalization will correct it, if application be timely made.

11. When considered with reference to taxation, money is transitory property, and its mere presence on deposit in banks does not neecssarily render it subject to taxation there.

12. Although the assessment upon a certain class of personal property may have been erroneously made, under the *bona fide,* but mistaken belief of the tax assessor that it has been properly assessed as provided by law, that circumstance, standing alone, will not necessarily invalidate the assessment against other classes of property, lawfully assessed, particularly where it is not shown that the tax assessor's failure to properly assess the first mentioned class has affected the complaining tax payer otherwise or differently than other tax payers similarly situated, or placed upon him any greater burden than upon others.

An appeal from the Circuit Court for Hillsborough County; F. M. Robles, Judge.

Reversed.

*H. S. Hampton, Sandford & Hampton* and *Myers & Myers,* for Appellant;

*W. B. Dickenson,* for Appellees.

STRUM, J.—Appellant, the City of Tampa, as complainant below, brought its bill of complaint against appellees for the purpose of enforcing the payment of certain taxes levied by said city against property standing in the name of Ruby B. Palmer, described as the South ten feet of Lot 8, Block 3, and all of Lot 9, Block 3, of Kennedy's subdivision, Tampa Heights, situate at the northeast corner of Florida and Palm Avenues in the City of Tampa. The bill, as amended, alleges in substance the yearly assessment of city taxes against said property for the years 1916 to 1920, both inclusive, the failure of appellees to pay the same within the time prescribed by law, and

the due certification thereof by the City Tax Collector to the City Attorney for collection by the latter in accordance with the charter provisions of the City of Tampa. The bill prays for an accounting and a lien upon said property in amount of the unpaid taxes, a sale of said property, if necessary, to pay the amount of said lien, and for other relief customarily incident to the enforcement of such a lien.

By joint answer, the appellees admit their ownership of the property as well as the assessment and non-payment of the taxes. Appellees further aver, however, that they have not paid such taxes because they deem the assessment thereof to be contrary, in several respects, to the principles of equality and uniformity of taxation prescribed by the Constitution of the State of Florida. The principal points of attack made upon said assessments by the appellees in their answer, briefly stated, are as follows:

(a)    That the assessed valuation of said property for the years in question are "grossly" in excess of both the actual and relative value thereof;

(b)    That said assessments have been arbitrarily made by appellant, "without any adequate investigation and view of said property to ascertain its actual value."

(c)    That, upon the information and belief of appellees, "vast quantities" of personal property located in the City of Tampa has not been assessed by appellant during the tax years in question;

(d)    That "vast sums" of money on deposit with individuals and corporations, amounting to millions of dollars, has not been assessed by appellant for any purpose whatever during said tax years, "although the same was subject to tax."

In support of the averments of inequality and lack of

uniformity in respect to the valuation of appellees' property, the answer further avers that the dwelling house situate thereon has depreciated at least fifty per cent since it was built, and "is now not actually worth the amount of money for which the same is assessed," and further that said dwelling house "is assessed in a sum 'grossly' in excess of its actual value as compared with other dwellings situated in the City of Tampa, and in far more advantageous situations than that of defendants (appellees)." The answer refers specifically to ten other parcels of property situate at divers points within the City of Tampa, each of which parcels, or the buildings thereon, and in some instances both the land and the buildings, are alleged to be of materially greater actual or relative value than that of appellees, although valued for purposes of taxation, during the years in question, at a sum substantially less. Some of the parcels referred to are averred by the answer either to have cost or to be of a present value two to five times that of appellees' property, although assessed at substantially the same value as the property of appellees, while others are averred to be of substantially the same actual value as the property of appellees, although valued on the assessment rolls for purposes of taxation at only one-third to one-half the value at which appellees' property is assessed.

Appellant excepted to and moved to strike certain material portions of the answer, which exceptions and motion were overruled by the Circuit Judge, from which order an appeal to this court was taken by the city. The answer of appellees, taken as a whole, and considering the many vigorous averments therein charging an arbitrary method of valuation alleged to have been followed by the Tax Assessor, and that the valuations fixed by him were grossly in excess of the value of such property, and made

"without any adequate investigation and view of said property to ascertain its actual or relative value," is such as would support proof of a fraudulent and *intentional* violation of or omission to follow the mandatory requirements of the Constitution, which, under the rule announced in Graham v. City of West Tampa, 71 Fla. 605, 71 South. Rep. 926, and Camp Phosphate Co. v. Allen, 77 Fla. 341, 81 South. Rep. 503, would entitle the appellees to relief in a court of equity, even though the proceedings authorized by law for seeking relief from administrative officers were not utilized. Upon such considerations, this court, on the former appeal, affirmed the ruling of the Circuit Judge overruling appellant's exceptions and motion to strike. City of Tampa v. Palmer, 83 Fla. 457, 91 South. Rep. 368. Thereafter testimony was taken by the parties, and upon final hearing the Circuit Judge found the equities to be with the defendants and entered a final decree dismissing the bill. From the final decree this appeal was taken.

The good faith of tax officers and the validity of their official actions are presumed; and when assailed the burden of proof is upon the complaining party. Camp Phosphate Co. v. Allen, *supra;* German-American Lumber Co. v. Barbee, 59 Fla. 493, 52 South. Rep. 292. The question now here for determination, therefor, is whether or not, by the testimony, the appellees have met the burden thus cast upon them and so sustained the averments of their answer as to entitle them to relief in a court of equity under the circumstances shown by testimony.

Determination of this question involves a clear and accurate understanding of the rule with reference to the circumstances under which courts of equity will grant relief against the official acts of public officials clothed with authority to levy, assess and equalize taxes.

As early as the year 1871, this Court held in the case of King v. Gwynn, 14 Fla. 32, that a bill in equity will not be sustained which seeks to enjoin the collection of a tax on the ground of mere irregularity in the assessment or the excessiveness of the tax. The word "irregularity" as just used does not embrace or extend to cases where essential provisions of constitutional or statutory law have been violated or ignored in such manner as to render the tax void, and is by no means synonymous with either the words "illegal" or "unlawful." Further, in the case of King v. Gwynn, *supra*, this Court said "It does not follow that every person whose taxes are rated higher than they should be, or who may be injured by the errors of ministerial or judicial officers in the attempt to perform official duties, may have a remedy by bill in chancery." The bill of complaint in that case, brought upon the sole ground that the tax was excessive, was dismissed, although the complaining tax payer had duly made return of his lands for taxation as required by the statute. And in Shear v. County Commissioners of Columbia County, 14 Fla. 146, this Court held that the then existing statutes providing a remedy for an *illegal* assessment by a petition to the Circuit Judge, did not embrace a case in which the sole claim of "illegality" was the *excessiveness* of the tax. In that case, this Court held that the Circuit Judge, in entertaining a petition upon the sole ground stated, went beyond his authority under the statute, because his action was an attempt to review the exercise of a discretion as to *values* vested in the County Commissioners, error or mistake in the exercise of which did not render the tax *illegal* in the absence of other fault. Mr. Chief Justice RANDALL in this case handed down a specially concurring opinion, clearly setting forth that the remark in King v. Gwynn, *supra*, that "the 4th section of Chap-

ter 151, Laws of 1847-8, provides an ample and convenient remedy by petition to the Circuit Judge, who will examine the matter and decide upon the *lawfulness* of the assessment'' was not understood to assert or admit the proposition that an excessive assessment would be treated as an unlawful or illegal assessment by virtue of that fact alone.

The case of German-American Lumber Co. v. Barbee, 59 Fla. 493, 52 South. Rep. 292, was another in which a particular assessment upon certain specific tracts of land was claimed to be illegal because of an alleged arbitrary and excessive valuation placed thereon by the Tax-Assessor. There was no proof, however, that the Assessor had adopted any arbitrary rule or plan of assessment which was without regard to the real values, although the complainant insisted that the Assessor had adopted an erroneous method or theory of valuation which had resulted in an excessive tax upon the lands in question. In affirming the decree dismissing the bill of complaint, this court said : ''There is no allegation or proof that complaint was made to the County Commissioners of the alleged excessive valuation of the lands as should have been done by the complainant, if the legality of the assessment is to be attacked on the ground that the valuation is discriminatory and excessive. On the contrary, there is evidence that no such complaint was made to the County Commissioners.    *   *   * The law contemplates that a wide discretion be accorded to the Tax Assessor in the valuation of property for the purposes of taxation. In the absence of a clear and positive showing of fraud or of an illegal act or of an abuse of discretion rendering an assessment authorized by law so arbitrary and discriminating as to amount to a fraud upon a tax payer or to a denial of the equal protection of the laws, the courts will not in general control the *discretion* (italics mine) of the Tax Assessor

in making valuations for taxing purposes. The burdens of taxation cannot be made exactly equal.''

The same doctrine was again announced in Wade v. Murrhee, 75 Fla. 494, 78 South. Rep. 536, decided in 1918, when this court said: ''The tax assessor of a county may exercise a wide discretion in the valuation of property for the purpose of taxation, and the courts will not, as a general rule, in the absence of a clear and positive showing of fraud or illegality, or the abuse of discretion rendering an assessment authorized by law so arbitrary and discriminatory as to amount to a fraud upon the taxpayer or to a denial of the equal protection of the law, undertake to control such officer in the exercise of such discretion.''

In City of Tampa v. Kaunitz, 39 Fla. 683, 23 South. Rep. 416, the doctrine was extended to cases of omission of Tax Assessors from the assessment rolls of taxable property under the *bona fide* belief that such property was exempt from taxation, though the supposed exemption was unauthorized and the property in fact subject to taxation, this Court saying: ''If tax officers intentionally omit taxable property from the assessment rolls for an improper purpose, thereby unequally and inequitably adjusting the burdens of taxation, the entire assessment will be illegal and void. If, however, the omission arises in consequence of a *bona fide* belief on their part that the omitted property is exempt from taxation, or results from inadvertence or negligence, without any intent to impose additional or unequal burdens on other taxpayers, the assessment will be valid.

Situations clearly distinguishable from the foregoing, however, are presented by the cases of Graham v. City of West Tampa, 71 Fla. 605, 71 South. Rep. 926, and Camp Phosphate Co. v. Allen. 77 Fla. 341, 81 South. Rep. 503.

In the Graham case, the complaining taxpayer's bill alleged that the tax assessor "assessed complainant's land at a value entirely arbitrary, unjust and excessive, said value being arrived at or determined in an arbitrary and illegal manner; that said assessor at no time visited or inspected said lands, though unacquainted with their value, and though often requested so to do by complainant; and complainant on information and belief charges that said assessor made no effort to ascertain and determine the value of said lands; and that the value actually placed thereon by said assessor, to-wit, $4,150.00, was by him fixed arbitrarily and not upon any evidence which might or could enable him to form a fair and just estimate of its value for assessment. That said assessed value is more than double the actual cash, fair or just value of said lands, * * *." The Court held that the allegations of this bill of complaint "as to the *manner* in which the valuation of complainant's property was ascertained," show manifest injustice and illegality, which require a response from the city." A careful inspection of the above quoted allegations of the bill will show not only a claim of excessive valuation, but of an excessive valuation arbitrarily and *intentionally* made, without knowledge of the actual value of the lands, and without effort to ascertain and determine the value thereof, which alleged conduct of the assessor would be such an abuse of the discretion vested in him as would amount to a fraud upon the rights of the tax payer, and "a flagrant violation of or omission to follow the mandatory requirements of the law in valuing property for taxation," a situation clearly distinguishable from a mere mistaken exercise of judgment or discretion. Hence equity will take jurisdiction of such a case, not for the purpose of controlling the discretion of the assessor, but to remedy the fraud thus perpetrated by the abuse of that discretion.

In the Camp Phosphate Co. case, *supra,* the evidence shows a method of excessive valuation arbitrarily, systematically and intentionally made, without reference to actual values. The assessor placed a certain flat sum per acre on all farm lands, regardless of the improvements thereon, or inherent differences in value ,a certain flat sum per acre upon all orange groves, and followed the same method in assssing other classes of property, including that of the complainant in that suit, without regard to the real and known value of the property assessed. In respect to phosphate lands, of the kind in question in that case, the assessment was by mere guesswork, the values being excessively and arbitrarily fixed without regard to whether any mineral valuable for use or for mining purposes was in the land or not, and upon such lands owned by corporations the valuations were from three to five times as much as the value placed upon similar lands of resident owners. The uncontradicted evidence in that case shows that many unprospected tracts of land owned by corporations were assessed as phosphate land upon a valuation of $15.00 per acre, whereas the lands adjoining owned by residents were assessed at $3.00 per acre. The assessor admitted that in so doing he followed the ''blanket system,'' without knowledge of actual values, acting sometimes upon mere suspicion that the lands contained phosphate. Obviously, such a method *knowingly, systematically* and *intentionally* followed, is contrary to equity and good conscience, and is such a wilful and flagrant abuse of discretion as to amount to a fraud. Upon application being made to the Board of Equalization, that body, though knowing of the methods followed by the assessor and being aware of the intentional, arbitrary and systematic discriminations practiced by the assessor, declined to equalize the assessments. Hence, in that case, equity took jurisdiction, not for the purpose of control-

ling the *bona fide* exercise of administrative discretion, but to prevent the fraud resulting from the intentional abuse of that discretion.

In this case, the facts shown *by the testimony* in reference to the methods pursued by the assessor in fixing the valuation upon appellees' property, and the amount of the valuation so fixed, both actual and relative, are clearly distinguishable in their essential features from the facts alleged in the bill in the Graham case, *supra,* and shown by the testimony in the Camp Phosphate Co. case, *supra.*

Mr. Regener, the assessor who fixed the valuations for the years 1916, 1917 and 1918, testified that he fixed such valuations fairly, accurately and reasonably, with just relation to. the actual and relative value of said property, based upon his personal inspection and knowledge of the property in question. Mr. Wright, who fixed the valuations for 1919 and 1920, testified substantially to like effect. Both assessors testified that they followed the law and assessed appellees' property, and all other property, upon an equal and uniform basis, based upon a prior knowledge of the actual value or an inspection to determine such value. While such testimony, particularly when categorically rendered, will yield to definite proof or admission to the contrary, such proof in this case is entirely lacking. The motives and *bona fides* of the tax assessors in making the questioned valuations are nowhere seriously assailed in the testimony. The sole attack is based upon a claim of excessive valuation, both actual and relative, and the proof falls short of a clear and positive showing of any arbitrary or intentional overvaluation without knowledge of actual value, or under other circumstances which would amount to fraud.

The undisputed testimony shows both assessors to have been intimately familiar with the property of appellees.

Mr. Wright lived only one block from said property during the years he was tax assessor, and had lived in that location for twenty-seven years, passing the appellees' property practically every day. He saw the dwelling thereon almost every day during its construction and thereafter to the time of his testimony. Mr. Regener testified, without contradiction, that he had also been familiar with such property since the time said dwelling was built, a period of about twenty-three years. Mr. Wright testified that he owned a corner lot on Florida Avenue in the next block north of appellees' property, and that his lot, though four feet smaller in frontage, was assessed by him at the same valuation placed by him on the corner lot of appellees—$1,600.00—and that all other corner lots in that subdivision, facing on Florida Avenue, were assessed upon the same valuation. We refer to these matters to illustrate the failure of the testimony to sustain any imputation of *mala fides* on the part of the assessors, or any intentional, arbitrary or systematic method of excessive valuation knowingly followed by them with fraudulent intent, or which in law would amount to fraud upon or an unjust discrimination against appellees. See Chicago Great Western Ry. Co. v. Kendall, decided by the United States Supreme Court November 17, 1924—U. S.—45 Sup. Ct. Rep. 55.

Besides the appellee Thomas Palmer, three witnesses engaged in the real estate business in Tampa testified on behalf of appellees that in their opinion the valuation placed upon appellees' property was not a just, fair or reasonable valuation when compared with the valuations placed upon certain other parcels of property mentioned in the answer. Their testimony was almost wholly categorical. Three witnesses for the city, all of them engaged in the real estate business in Tampa for many years, flatly testified to the contrary. Their testimony is also some-

what categorical, but is supplemented with some measure of facts upon which their conclusions are based, which facts tend to show many substantial differences in value between the property of appellees and the other parcels of property with which it is compared in the answer. All this testimony was taken several years after the questioned assessments were made, and it is noticeably lacking ing in specific estimates of the actual or relative values of the properties involved at the time the assessments were made. The testimony of these seven witnesses, all apparently qualified upon the subject, clearly illustrates the wide diversity of opinions in matter pertaining to value, how variant and uncertain are the elements which enter into its determination, and the inevitable conflict resulting from an issue on the subject. It is a forceful justification of the rule previously referred to that the law accords to the tax assessor a wide discretion in the valuation of property for purposes of taxation, which will not in general be controlled by the courts in the absence of a clear and positive showing of fraud or of an illegal act or omission to act or an abuse of that discretion amounting to fraud.

The law does not assume that the assessor is infallible, nor that his valuations shall be conclusive, but contemplates that he might err, and therefore provides the means for correcting his errors and equalizing his values both by statutes requiring property owners to return their property for taxation and statutes creating boards of equalization.

The charter of the City of Tampa, as amended, Chapter 8364, Acts of 1919, provides: "All persons, firms and corporations owning property subject to taxation, whether real or personal, or both, are hereby required to make return of the same to the Tax Assessor before the first day of March of each and every year, and such returns

shall be made upon and in compliance with blanks prepared, therefor and furnished by the City of Tampa, through the assessor's office, and shall contain a complete list of all the property, both real and personal, taxable by the City of Tampa belonging to such person,   *   *   * 'together with the full cash value thereof.'' It is admitted by the testimony that appellees made no return during the years in question.

Section 12 of said Chapter 8364, provides that the Tax Assessor shall meet with the Board of Equalization, created by another section of the charter, in the office of the Commissioner of Public Works on the first Monday in June in each year, or as soon thereafter as practicable, for the purpose of reviewing and equalizing the assessments and hearing all persons who may feel aggrieved, further providing for due notice to all tax payers of the convening of said Board, and requires said Board to remain in session ten days, or as long as may be necessary for the purposes aforesaid.   The testimony shows that appellees did not avail themselves of this opportunity provided by law for protesting the valuations placed upon their property and thus seek its correction if excessive.

The fixing of a valuation upon property by a tax assessor for purposes of taxation, and the equalization thereof by a board of equalization, are administrative acts, involving the exercise of administrative discretion, and a court of equity will not in general control that discretion unless it is illegally or fraudulently exercised or exerted in such manner or under such circumstances as will amount in law to a fraud.   King v. Gwynn, *supra;* Wade v. Murrhee, *supra;* Board of Cm'rs. of Finney County v. Bullard, 77 Kan. 349, 94 Pac. Rep. 129, 16 L. R. A. (N. S.) 807.   The jurisdiction of courts of equity in such cases is one of necessity.   Relief will not be granted by courts of equity in such cases merely upon the ground that

the valuation is excessive, for we have seen that mere excessive valuation when due solely to error in judgment, inadvertence or mistake, does not amount to fraud (Shear v. Commissioners of Columbia County, *supra*), and the assumption of jurisdiction of such a case by a court of equity, would be an attempt to regulate and control the administrative discretion expressly vested by law. in another body, and to grant relief in equity when there exists a plain, adequate and complete remedy at law. German-American Lumber Co. v. Barbee, *supra;* Taylor v. Secor, 92 U. S. 575, text 614, 23 L. ed. 663. See also the recent case of McGregor v. Hogan, 263 U. S. 234, 68 L. Ed. 282. In order for equity to take jurisdiction, the case must be brought within some of the recognized principles of equity jurisdiction. Such a situation might be presented where an individual or specific assessment was so obviously and flagrantly excessive as to clearly impute to the assessor an intention to arbitrarily discriminate against the tax payer, and circumstances resulting in a fraud upon the tax payer are set out in the cases of Graham v. City of West Tampa, and Camp Phosphate Co. v. Allen, *supra,* under which equity would take jurisdiction. An *illegal* assessment, that is, an assessment wherein, independent of the exercise of a discretion as to value, there appears prejudicial and material errors *in matter of law,* would also constitute grounds for equitable interference. But mere excessive valuation, resulting solely from inadvertence or mistaken judgment, and unaffected by any element of illegality in matter of law, or intentional or other abuse of authority, or fraud, express or implied, will not suffice as a ground of equitable jurisdiction.

Upon the testimony, this case clearly resolves itself into a claim of mere excessive valuation, unaffected by either illegality in point of law, actual fraud, or conduct on the

part of the tax assessor which in law would amount to a
fraud upon or unlawful discrimination against the tax
payer. The principles of law announced in King v. Gwynn,
Shear v. County Commissioners of Columbia County, German-American Lumber Co. v. Barbee, and Wade v.
Murrhee, *supra*, are therefore controlling in this case. Under the statute, it was the duty of appellees, in the first
place to make due return of their property for taxation,
though their failure so to do would not, of and in itself,
work an estoppel against them. Under the circumstances
and upon the facts shown in the testimony, however, the
taxpayer's remedy is before the Board of Equalization,
and not in a court of equity.

The presumption is that the Board of Equalization would
have corrected the valuations, if excessive, had such application been made. Collins v. Keokuk, 118 Iowa 30, 91 N. W.
Rep. 791.

Appellees contend that the assessor failed to assess "vast
quantities" of personal property during the tax years in
question, but the testimony does not support such contention. The assessors testified that they assessed upon an
equal and uniform basis, actual and relative, all personal
property of which they had or could obtain knowledge.
This testimony is not materially refuted.

Appellees further claim that "vast sums" of money on
deposit with certain banking institutions was not assessed,
"although the same was subject to tax." We can find no
sufficient proof of the latter averment, which is a most
material one. Money is transitory property, and its mere
presence on deposit in banks does not necessarily render it
subject to taxation there. The bank assessments appear to
have been made in good faith, and in accordance with law
and the then existing instructions of the Attorney General,
and even though erroneously made under such circum-

stances, it would not necessarily invalidate the assessment against appellee's property. Tampa v. Kaunitz, *supra;* Doty Lumber & Shingle Company v. Lewis County, 60 Wash. 428, 111 Pac. Rep. 562. And particularly is this true, where it is not shown that the assessor's failure to properly assess such money and other personal property has affected appellees otherwise or differently than other tax payers similarly situated, or placed upon appellees any other or greater burden than upon others.

For the reasons stated, the final decree of the Circuit Court must be reversed, and the cause remanded for further proceedings consistent with this opinion.

Reversed.

WEST, C. J., AND WHITFIELD AND TERRELL, J. J., concur.

ELLIS, J., dissents.

WHITFIELD, J., concurring:

I fully concur in the opinion prepared by Mr. Justice STRUM.

It is the duty of every one living in or owning property in the State to share in the payment of taxes that are necessary for an efficient and economical administration of the government; and this applies also to local county, municipal or district taxation. But natural justice and organic provisions designed to secure equality of public burdens and benefits, require that taxes shall be imposed with reference to the nature and values of property so that substantial equalities may exist among tax payers in proportion to the taxable property owned by them. While in the enactment and in the execution of tax laws the lightest possible general burden and equality and justice among tax payers should be the main objectives, yet it is, as a practical matter, impossible to attain exact equality in the distribution of tax

burdens.   Where the laws enacted and the action taken
thereunder in imposing taxation are reasonably fair and
there is no intentional arbitrary, systematic or substan-
tially unjust discrimination or palpable abuse of authority
in the classifications and valuations of property for taxa-
tion purposes, particular instances of over-valuations do
not render the assessments illegal, and relief from specific
discriminations complained of should be sought from the
proper administrative officials or boards during the period
when assessments are being made, equalized and approved,
or within the time or by the means provided by law.   Relief
in the courts can be had in general only when there has
been an illegal or unauthorized assessment or when the val-
uations were made by processes involving abuse of author-
ity, or systematic or intentional and arbitrary discrimina-
tion resulting in substantial injustice that in effect denies
the equal protection of the laws.   No systematic or inten-
tional or arbitrary abuse of authority in fixing valuations
for assessment purposes is shown by the evidence in this
case, and no application to the proper administrative offi-
cials for relief from asserted particular excessive valuations
was made as contemplated by law. The appellees seek relief
from all taxes assessed on the ground that the amount is
excessive resulting from over-valuation of the property;
but the appellees neglected to ask the proper administra-
tive officials for a reduction of the values placed on the
property so as to warrant relief in equity for oppressive
over-valuation.

The law contemplates that the duly designated assessing
officers shall make just, fair and impartial valuations of
property for assessment purposes; and their valuations,
when made in the manner provided by law and with prac-
tical regard to their existing conditions and circumstances
of character, locality, use and other matters that afford or

affect values, will in general not be disturbed by the courts, unless it appears that by intentional unjust discriminations or by a systematic method of arbitrary action (Camp Phosphate Co. v. Allen, 77 Fla. 341, 81 South. Rep. 503) there is manifest and gross inequality or injustice in fixing values, abstractly or relatively, showing an abuse of the authority to make valuations. See German-American Lumber Co. v. Barbee, 59 Fla. 493, 52 South. Rep. 292; 37 Cyc. 1010; Los Angeles Gas & Electric Co. v. County of Los Angeles, 162 Cal. 164, 121 Pac. Rep. 384, 9 A. L. R. 1277; Cooley on Taxation (4th ed.) §§ 1144, 1406.

This is the rule of law to be applied even though it appears that particular valuations may not be relatvely equal (26 R. C. L. 368) since standardized valuations or precise equality of burdens among taxpayers upon all property cannot be obtained, for values are human concepts, without exact measurements, and there will always be some inequalities that must be borne or shared by property owners in order that the expenses of government may be met, which is a dominant consideration. The law provides that substantial inequalities in particular valuations may be duly remedied by the authorized processes of equalizing boards. The proofs in this case do not support the allegations of illegality and arbitrary action alleged, as in Camp Phosphate Co. v. Allen, *supra*. The Graham case (Graham v. City of West Tampa, 71 Fla. 605, 71 South. Rep. 926) was considered on the pleadings which alleged illegality and abitrary action in fixing valuations for assessment purposes. No testimony had been taken, and the demurrer admitted the allegations as to illegal and arbitrary valuations and assessments.

While equity will give appropriate relief against illegality or intentional or systematic gross injustice in imposing taxes, it will not afford immunity from taxation merely because there may be some inequality in valuations of prop-

erty for assessment purposes, particularly where the party resisting the tax made no effort in due season to remedy the asserted inequality by administrative processes, and there is no showing that proper tax returns or other attempts were duly made to obtain just and lawful assessments of the property that is subject to taxation. If appellee was entitled to a reduction in valuations and consequently to a reduction of the amount of the tax, that relief should have been sought before the assessor or the equalizing board. Equity will not give relief from the entire tax on the mere ground of over-valuation not involving legal fraud, when no application was made under the law for administrative relief from the asserted over-valuation.

The duty to bear a just share of taxation, justice to other tax-payers and the requirements of government make it inequitable to give relief from all taxation because there may be some inequality in an assessment valuation that, if it in fact existed, could have been remedied by pursuing administrative processes in time for proper assessments to be made, so that, as contemplated by law, all may appropriately share tax burdens that are necessary to efficient government for the protection of the personal and property rights of all.

TERRELL, J., concurring;

A careful study of the whole record in this case impresses me with the fact that appellee Palmer has been taxed higher comparatively than was done in the specific instances cited in his answer to the bill of complaint. It is not made to appear, however, that such over taxation or assessment was imposed under circumstances that would be illegal, arbitrary or fraudulent in law, but was due to inadvertence or mistake in the exercise of discretion on the part of the taxing officers.

If appellees had complained at the proper time and made the effort provided for them under the law to have their assessment reduced, and had offered to pay the taxes legally due and without avail, they might have had good standing in a court of equity; but as against the fact that this was not done, relief cannot be granted solely on the ground of excessive assessment unless such excessive assessment amounts to fraud in law.

The writer has had considerable experience examining and litigating these tax questions and to my knowledge inequalities in assessments like those here complained of exist in many counties and municipalities throughout the State, but they are as a rule the product of our antiquated, unbusiness-like method of imposing assessments on property and are not the result of a systematic scheme to over-burden or defraud property owners. I am convinced that a very large proportion of our taxpayers are burdened with these inequalities, but they must be pursued as the law directs, or must be shown to have been made under circumstances amounting to fraud before equity can relieve against them.

I find no fault with the rule to the effect that the decree of a chancellor on questions of fact will not be disturbed unless the evidence clearly shows that the decree was erroneous, but in this case the reversal is not on the facts, but on the application of the wrong rule of law to the facts shown by the record. It is true that highly respectable gentlemen gave testimony for both sides that was contradictory, but the contradiction was entirely as to their judgment of the value of the property brought in question, and did not impute fraud or an arbitrary purpose on the part of the appellant to overtax appellees.

For these reasons I concur in the opinion of Mr. Justice STRUM.