**WALFIELD, Inc., et al v. SPROUL, et al.**
No. 65-C-3022.
Circuit Court, Palm Beach County.
June 7, 1966.

C. Robert Burns, Palm Beach, for plaintiffs.

Ronald Sales, West Palm Beach, for defendants.

JAMES C. DOWNEY, Circuit Judge.

*Final decree:* This cause came on for final hearing upon plaintiffs' complaint and the answers of the defendants and intervenor, Edgar W. Maxwell, as tax assessor of Palm Beach County.

In their complaint plaintiffs allege that the assessments placed upon their properties by the tax assessor, and approved by the board of equalization, for 1965 ad valorem taxes, are so excessive as to constitute a legal fraud upon plaintiffs. They allege further that within the time prescribed by law they made written and oral objections to such excessive assessments before the board of equalization. The amount of tax admittedly due is tendered into the registry of the court. Finally, plaintiffs pray that the court ascertain the true full cash value of each parcel of land involved and enjoin the defendants from collecting the excess over full cash value.

Defendants generally deny the allegations of the complaint. The tax assessor, in addition, affirmatively pleads a failure on plaintiffs' part to properly exhaust their administrative remedies.

The property involved in this suit is a large number of vacant platted lots in the subdivision of Rolling Green Ridge, First Addition, and five parcels of unplatted acreage, all within the municipal limits of Boynton Beach, Florida.

With reference to the 1965 ad valorem taxes, plaintiffs filed no tax return with the county tax assessor, but plaintiffs' agent appeared before the board of equalization on three occasions and orally protested that all of the assessed valuations were too high. In addition said agent filed a written protest. The board was not advised of the valuations plaintiffs placed on their property, though the board inquired as to such valuations. However, the board reduced the assessor's original valuations on the subdivision lots by 25% as a result of plaintiffs' protest. The assessment on the acreage was not reduced.

Plaintiffs adduced testimony as to the market value of the property from two appraisers and defendants offered testimony from two others. All of these experts were well qualified men, fully familiar with the subject property, comparable sales and the other factors to be considered in arriving at market value. Generally speaking, the record reflects four sets of market values on each parcel — plaintiffs' value, plaintiffs' appraisers' value, defendants' appraisers' value and the assessor's value. In most instances they all differ. As an example, on the first parcel, control no. 5316-1-061-21 (defendants' exhibit 13), plaintiffs' value at $1,300, plaintiffs' appraisers' value was $1,800, defendants' appraisers' value was $2,000, and the assessor's value was $2,340. On control no. 5316-301 the plaintiffs' value was $20,000, the defendants' appraisers' value was $30,000, plaintiffs' appraisers' value was $40,000, and the assessor's value was $50,000. On almost every parcel the assessor's valuation was the highest, the plaintiffs' the lowest, and the four appraisers' somewhere in between.

If this were a suit in which it was the function of the court to determine the fair market value based on the record and decree that to be the proper assessed valuation, the court would in many instances be justified in reducing certain of the assessments somewhat. For example, on control no. 5321-301 the valuations run from plaintiffs' low of $16,350 to the assessor's high of $81,750, and on control no. 5316-302, from the defendants' appraisers' low of $5,300 to the assessor's high of $14,340. However, under the law of this state, in a suit of this nature, such is not the court's function.

This trial began with the assessor's acts clothed with a presumption of bona fides and correctness. Harbond, Inc. v. Anderson, 134 So.2d 816. No charge is made, nor was any proof adduced, that the assessor acted otherwise than in good faith and with proper motivation. There is no charge of intentional, systematic, or planned deviation from proper assessing methods, techniques, and procedures without regard to actual values. The sole attack is based upon excessive valuation. A review of the cases impels one to the conclusion that an attack upon an assessment upon that ground alone, without more, will not justify a court in striking down an assessment, or a portion thereof. City of Tampa v. Palmer, 105 So. 115; Shear v. County Commissioners of Columbia County, 14 Fla. 146; German-American Lumber Co. v. Barber, 52 So. 292. In cases where the court has upheld an attack upon the excessiveness of an assessment there have been other allegations of illegality in the assessing procedure. See: Graham v. City of West Tampa, 71 So. 926; West Virginia Hotel Corporation v. W. C. Foster Co., 132 So. 842; Camp Phosphate Co. v. Allen, 81 So. 503.

Of course, if the excess is clearly shown to be so gross as to constitute constructive fraud, the court will grant relief. Where that undefined area begins and ends is unknown, but it is the opinion of the court that in the state of this record, demonstrating the wide variance in expert opinions as to value, no constructive fraud has been shown. The case more properly falls into that other undefined area, the tax assessor's "wide" discretion. City of Tampa v. Palmer, supra; Harbond Inc. v. Anderson, supra. This record shows that the assessments were made in the manner provided by law, with regard to existing conditions and circumstances of character, locality, use and matters affecting value as prescribed by the legislative guidelines set forth in §193.021, Florida Statutes.

Viewing plaintiffs' case in its strongest light they charge the assessor with "error in judgment" — but the proof shows such error (if any there be) to have been made in good faith. The cases are numerous which hold equity will not grant relief for mere "errors of judgment" of the tax assessor. Florida Land Co. v. Graham, 121 So. 462, City of Tampa v. Palmer, supra. To assume jurisdiction in such cases would constitute an attempt to regulate or control administrative discretion expressly vested in another body.

With regard to defendants' affirmative defense of plaintiffs' failure to exhaust their administrative remedies, the evidence shows plaintiffs did appear at the equalization hearings on three occasions and protested the assessor's valuations and that they filed a written protest. While it might have been more helpful to have been pre-

pared to advise the board of their opinion as to the appropriate valuations, the statutes do not set forth any particular form which the protest must take. In addition, as a result of such protest, the board did, in fact, reduce the valuation on numerous parcels by 25%.

It is, thereupon, ordered, adjudged and decreed that the plaintiffs' complaint be, and the same is hereby dismissed, with the costs of this suit to be taxed against the plaintiffs.

The court reserves jurisdiction of this cause for the purpose of determining any questions relating to the payment of the taxes, penalties or interest.