245 So.2d 645 (1971)
William MARKHAM, As Tax Assessor of Broward County, Florida; W.H. Meeks, Jr., As Tax Collector of Broward County; Broward County, Florida, and Fred O. Dickinson, Jr., As Comptroller of the State of Florida, Appellants,
v.
Samuel FRIEDLAND, As Trustee, and Samuel Friedland, Individually, Joined by His Wife, Hattie Friedland; and Irving Cowan, Gerald Taines, Harold Z. Taines, and Presidential Towers, Inc., Partners Associated in Business under the Common Name and Style of "Presidential Towers Associates," Appellees.
No. 69-777.
District Court of Appeal of Florida, Fourth District.
February 19, 1971.
Rehearings Denied April 5, 1971.
*646 Regis Reasbeck, Hollywood, and Gaylord A. Wood, Jr., Fort Lauderdale, for appellant Markham.
William H. Meeks, of McCune, Hiaasen, Crum & Ferris, Fort Lauderdale, for appellant Meeks.
John U. Lloyd, County Atty., and Betty Lynn Lee, Asst. County Atty., Fort Lauderdale, for appellants Broward County and Fred O. Dickinson, Jr.
Hugh S. Glickstein, of Law Offices of Judson A. Samuels and Hugh S. Glickstein, and Thomas A. Thomas, Hollywood, for appellees.
WALDEN, Judge.
This appeal is taken from a summary judgment in favor of the fee owner and lessees of certain real property located in Broward County in an action to enjoin the Tax Assessor and Tax Collector of said County, as well as the County and the Comptroller of Florida, from assessing and collecting ad valorem taxes upon said property for the year 1968.
We affirm.
We adopt the text of the comprehensive and well-considered order entered by Judge LaMotte in the circuit court, as follows:
"This action was brought in 1969 by the fee owner and lessees of certain real property located in Broward County to enjoin the Tax Assessor and Tax Collector of said County as well as the County and the Comptroller of Florida, from assessing and collecting ad valorem taxes upon said property for the year 1968.
"The property is described as follows:
Lots 1, 2 and 3 in Block 14, of BEVERLY BEACH, according to the Plat thereof, recorded in Plat Book 22, Page 13, of the Public Records of Broward County, Florida.
"Under the terms of the lease between the Plaintiffs, the lessees are obligated to pay any ad valorem taxes assessed upon the property.
"The Complaint alleges that in 1968 the then Tax Assessor of Broward County, who is no longer in office, assessed the property for ad valorem taxes for that year in the sum of Fourteen Thousand Seven Hundred Fourteen and 46/100 ($14,714.46) Dollars; that the final Tax Roll for 1968 was certified with said assessment; that the Plaintiff-owner was billed by the Tax Collector of said County for said ad valorem tax; that the tax was paid in full by the Plaintiffs-lessees; and that the aforesaid Tax Collector delivered to the Plaintiff-owner a receipt, a true copy of which was attached to the Complaint, for the full, *647 complete and proper payment of the ad valorem tax upon said real property for 1968.
"The Complaint further alleges that the present Tax Assessor of Broward County, in April, 1969, executed and delivered to the Board of Commissioners of said County a Certificate of Correction, a certified copy of which was attached to the Complaint, for the purpose of back assessing the aforesaid real property for additional ad valorem tax in 1968; and that said Board approved said Certificate.
"The Answer of the present Tax Assessor alleges that in the absence of injunction he will increase the ad valorem tax upon said property for 1968; that on January 1, 1968, the building then being constructed upon said property was "substantially complete"; that the property should have been valued at $8,302,070.00; and that by "error, omission, oversight or fraud" the final, certified tax roll included the "real property" only at an assessed value of $540,000.00.
"The Court has considered all of the pleadings as well as all affidavits and counter-affidavits that have been filed by any party through the date hereof. Although the Court, at the outset of the second hearing, verbally denied the Tax Assessor's Motion for Leave to file Amendment to Affidavits, the Court has considered as true all of those matters contained in the affidavits offered by the Tax Assessor as are alleged to be within the personal knowledge of the particular affiant.
"The Court notes that the Tax Collector, as well as Broward County and the Comptroller of Florida, filed no affidavits in opposition to Plaintiffs' Motion for Summary Judgment.
"The Court has considered the Memoranda of Law submitted by the Plaintiffs and the Tax Assessor and has also considered the oral arguments made by said parties.
"The affidavits of the Plaintiffs, SAMUEL FRIEDLAND, who is the fee owner, and IRVING COWAN, who is one of the lessees, substantiate all of the aforesaid allegations of their Complaint.
"In addition, the affidavit of William G. Zinkil, who was the Tax Assessor of Broward County in 1968, establishes without contradiction that he had personal knowledge of the assessment of the subject property in 1968; that after examining the circumstances and discussing the matter with his attorneys, he determined in 1968 that the improvements being constructed were not `substantially complete' on January 1, and were not to be included in the valuation of the property; that without his knowledge the improvements were inadvertently included on the Primary Tax Roll in the valuation of the property; that he, as the Tax Assessor, determined in 1968, after `very careful consideration, examination of the law made available to him, and after discussing the matter with his attorneys' the building should be stricken from the primary assessment roll; and that he ordered it removed from the primary assessment roll.
"Accordingly, the Court makes the following findings:
"1. That the Court has jurisdiction over the parties and the subject matter.
"2. That William G. Zinkil, as Tax Assessor of Broward County, Florida, in the exercise of his judgment, determined that the improvements being constructed upon the real property in question were not `substantially complete', within the meaning of Florida Statutes, Section 193.11 (4) [F.S.A.], on January 1, 1968, and that said real property should be taxed in 1968 as unimproved land.
"3. That the aforesaid improvements were inadvertently included in the valuation of the subject property on the Primary Tax Roll for 1968, and that the said William G. Zinkil, as Tax Assessor for Broward County, Florida, ordered the removal *648 of same pursuant to his decision that the subject real property be taxed as unimproved land.
"4. That the subject real property was placed upon the final, certified tax roll for 1968 as unimproved land and was identified thereon by Folio No. 1124 01 040.
"5. That the subject real property was assessed for real estate taxes in the sum of Fourteen Thousand Seven Hundred Fourteen and 46/100 ($14,714.46) Dollars, by the said William G. Zinkil, as Tax Assessor of Broward County; and that the final tax roll for said County for the year 1968 was duly certified with said assessment.
"6. That a Tax Notice was sent by the Tax Collector of Broward County to the Plaintiff fee owner of the subject real property in accordance with the aforesaid final, certified assessment; and that the total aforesaid real estate tax, less the statutory discount, was paid by the Plaintiffs-lessees to the Defendant, W.H. MEEKS, JR., as Tax Collector of Broward County, pursuant to the lessees' obligation to pay said real estate tax in accordance with their lease.
"7. That upon payment of said real estate tax the aforesaid Tax Collector returned to the Plaintiff fee owner the aforesaid Tax Notice as a receipt for the full and complete payment of all real estate taxes upon the subject real property for 1968.
"8. That the Defendant, WILLIAM MARKHAM, having been elected to the office of Tax Assessor of Broward County, Florida, and having assumed said office on or about January 7, 1969, executed a Certificate of Correction on April 22, 1969, as to the subject real property for 1968, which Certificate constituted a reassessment of said property for said year on the basis of improved land.
"The sole question is whether a successor tax assessor can back assess real property as improved land after his predecessor has determined that real property should be taxed as unimproved land and after the certified assessed real estate tax has been fully paid. This raises a question of law which may be decided on motion for summary judgment.
"Once the Tax Assessor has certified the tax roll and the tax levied thereon paid on particular described property, said property cannot again be taxed for that particular year. Okeelanta Sugar Refinery, Inc. v. Maxwell, Fla.App. 1966, 183 So.2d 567, 568.
"Back taxing of property by an Assessor pursuant to Florida Statutes, Section 193.23 [F.S.A.], is only allowable as to property which has escaped taxation.
"It is elementary that in Florida improvements are material to `valuation' but are not a separate category for taxation. Florida Statutes, Section 192.02 [F.S.A.]. Accordingly, improved land, taxed as unimproved land, has not escaped taxation and is not the same as `omitted property'. Attorney General Opinions 068-84, 064-139; 84 C.J.S., Taxation, Section 508, page 959; Tradewell Stores, Inc. v. Snokomish [Snohomish] County, [69 Wash.2d 352] Wash., 1966, 418 P.2d 466; Palmer v. Beadle County, S.D. 1944, [70 S.D. 99] 15 N.W.2d 6; Hunt v. District of Columbia, C.A.D.C. 1939 [71 App.D.C. 143] 108 F.2d 10, 12.
"It is equally clear that the Certificate of Correction issued by the present Tax Assessor was not an alteration of the purely ministerial or administrative type subject to correction under Florida Statutes, Section 192.21 [F.S.A.]. Allen v. Dickinson, Fla. 1969, 223 So.2d 310; Homer v. Connecticut General Life Insurance Company, Fla.App. 1968, 211 So.2d 250; writ discharged [Fla.] 220 So.2d 361; Dade County v. Budd, Fla.App. 1969, 219 So.2d 63.
"The previous Tax Assessor, in fixing the valuation on the subject property for the purpose of taxation was engaged in an administrative act involving the exercise of administrative act involving the exercise of administrative discretion, which should not be disturbed unless illegally or fraudulently exercised. Powell v. Kelly, Fla. *649 1969, 223 So.2d 305, 307. The Counter-affidavits and pleadings reflect no evidence nor inference of illegality or fraud.
"The Court has considered the argument of the Defendant Tax Assessor that his predecessor in office used improper or illegal procedures in removing the improvements upon the subject property from the primary tax roll before the same was final and certified and has considered the affidavits offered by the Defendant Tax Assessor upon that point. Specifically, said Defendant argues that the previous Tax Assessor's failure to execute a Certificate of Correction with respect to the removal of the valuation of improvements from the primary tax roll and his failure to deliver same to and obtain the approval of the Board of County Commissioners was illegal. This, too, is a question of law.
"In anser to same, the Court considers that the tax assessor is under a continuing duty of preparing the legal tax roll, and has the power and authority to correct mistakes by making necessary changes and amendments. State [ex rel Ranger Realty Co.] v. Lummus, Fla. 1933, 149 So. 650; 31 Fla.Jur., Taxation, Section 238. There was no requirement, in this case, for the tax assessor to report to the Board of County Commissioners, or to them as the board of tax equalization or to the taxpayer his change in the primary or preliminary tax roll in the absence of change detrimental to the taxpayer. Attorney General's Opinion 061-92, Biennial Report of the Attorney General, page 154. The county board of equalization has no jurisdiction to assume the role of a tax assessor; it confines itself to equalization, not assessment. Attorney General's Opinion 051-283. The tax assessor in office in 1968 having determined, in the exercise of his judgment, that improvements should not be included on the primary tax roll, it was within his authority to order them removed from the primary tax roll, prior to certification, in the manner utilized in this case. Attorney General's Opinion 062-84.
"The Court makes the following conclusions:
"1. That the Defendant, WILLIAM MARKHAM, as Tax Assessor was without lawful authority to reassess the subject real property as improved land for 1968 after (a) his predecessor in office had determined that the real property should be taxed as unimproved land, and assessed the property as such; (b) the assessment had become final and certified and (c) the total real estate tax was paid in accordance with the assessment.
"2. That the back assessment attempted by WILLIAM MARKHAM, as Tax Assessor of Broward County, Florida, was not an alteration of the purely ministerial or administrative type authorized by Florida Statutes, Section 192.21 [F.S.A.].
"3. That there is no genuine issue of any material fact and that the Plaintiffs are entitled to judgment as a matter of law.
"Accordingly, it is thereupon
"ORDERED AND ADJUDGED that Plaintiffs' Motion for Summary Judgment be and the same is hereby granted."
Defendant's (the current tax assessor) first point on appeal argues that after the Board of Equalization has adjourned sine die, the tax assessor (meaning the predecessor assessor) may not make further changes in the tax roll without approval of the county commissioners. On this point defendant makes a strong equitable argument, that since the millage of tax recipient agencies is a function of total revenue over proposed budget, it deprives these agencies of anticipated and budgeted revenue if changes without notice are made after equalization. This may be a good argument and proper for legislative consideration, but the present state of the law simply does not support that contention. The actions of the tax assessor were not proscribed by statute or otherwise. Quite the contrary, the attorney general has specifically *650 indicated the absence of any obligation on the part of the tax assessor to report any reduction on the preliminary roll to the board of equalization. In Attorney General's Opinion No. 061-92, Biennial Report of the Attorney General (1961), he stated:
"1. The authority of a county board of tax equalization, after having adjourned its equalization meeting sine die, is found in § 192.21, F.S. [F.S.A.], and is limited to the consideration of corrections of errors of omission and commission of assessments pursuant to said section, and the correction of their own errors of omission and commission pursuant to said section.
"2. Where a county assessor of taxes discovers errors of commission or omission in the tax roll, and corrects them under and pursuant to said § 192.21, he should first, either obtain access to the tax roll, if in the hands of the tax collector, making the corrections thereon, or, should the tax collector prefer to make the corrections himself, advise the said collector of the changes to be made. He should also, where such changes have the effect of increasing assessments or denying homestead tax exemption claims, make a report thereof to the board of tax equalization and the taxpayers adversely affected.
"3. Only those changes made relative to valuation and homestead tax exemption, detrimental to the taxpayer, are required to be reported to the board of tax equalization and to interested taxpayers; however, we see no objection to the tax assessor making a full report to the board of all changes made of every kind and nature should such a report be desired by both, although the board would have jurisdiction only of the above mentioned changes.
"4. Like original tax assessments, the board of equalization and the taxpayers have the burden of moving against the corrections made by the tax assessor, in so far as they relate to valuations and denial of homestead tax exemption claims; otherwise, like original assessments, they become final within a reasonable time. The board is not required to actively concur in a change made by the assessor for it to become effective; only an objection by a taxpayer or positive action, within its jurisdiction, by the board will prevent the change from becoming effective."[1]
*651 The second point argued by defendant is a factual argument of whether Tax Assessor Zinkil abused his discretion by finding that the Presidential Towers improvements were not substantially completed. On this point defendant argues facts as follows: "On that date [January 1, 1968] there were temporary certificates of occupancy issued on twelve out of sixteen floors, or seventy-five percent of the building. There were one hundred and twenty-eight tenants actually residing in the building; and they were moving in at the rate of eight to fourteen a day, the only limitation being the lack of parking area for the moving vans. The final certificate of occupancy was issued on February 26, 1968. The Plaintiffs themselves stated to the Hotel and Restaurant Commission that they were open for business on December 1, 1967. Mr. Zinkil noted from his December 16, 1967, tour that the building was `very well within if not 100% awful close to it for January 1st. I am not making any inside investigation, but can see furniture on several floors.' (R.-59) The three field men whom Mr. Zinkil sent to investigate the interior reported that the building was 85% complete  `to go on '68 roll' * * *."
Defendant wonders how, in light of these facts, Tax Assessor Zinkil could take the property improvements off the roll the following August. No facts were shown which would overcome the evidence that the apartments were substantially completed on January 1, 1968. Defendant contends that since the inadequate assessment evidenced such a gross abuse of discretion, and assessment was arbitrary and void and subject to correction at any time.
Defendant raises this argument for the first time on appeal. But even were it timely raised defendant has not carried his burden. "* * * the prima facie correctness of an assessment, to be overcome, must be affirmatively assailed by appropriate and sufficient allegations and proofs, to the exclusion of every reasonable hypothesis of legal assessment." Harbond, Inc. v. Anderson, Fla.App. 1961, 134 So.2d 816, 820. See also Powell v. Kelly, Fla. 1969, 223 So.2d 305. The defendant alleged that "the certification of the tax roll with the $540,000.00 figure was due to error of commission or omission, oversight or fraud, and did not properly represent the actual assessment of the property * * *."
It is a well established rule, as cited in defendant's own case, that,
"The tax assessor of a county may exercise a wide discretion in the valuation of property for the purpose of taxation, and the courts will not, as a general rule, in the absence of a clear and positive showing of fraud or illegality, or the abuse of discretion rendering an assessment authorized by law so arbitrarily and discriminatory as to amount to a fraud upon the taxpayer or to a denial of the equal protection of the law, undertake to control such officer in the exercise of such discretion." City of Tampa v. Palmer, 1925, 89 Fla. 514, 105 So. 115, 118.
The trial judge has not abused his discretion in finding that defendant failed to meet this requisite degree of proof.
Defendant in his third point urges that the basis for the tax assessor's exercise of his discretion should have been more closely examined. In this argument defendant attempts to put the cart before the horse, for he must first show that there was an abuse of discretion, i.e. that the assessment was fraudulent or illegal. No evidence is submitted to show fraud or illegality. Or to put it another way, if the assessment as determined by the assessor is legally justifiable, what relevance is there in the method used to obtain that assessment? Furthermore, an omission will not make an assessment void even where improper if "* * * the omission to assess taxable property arises in consequence of a bona fide belief on the part of the taxing officers that the omitted property is exempt from taxation, or results from inadvertence or negligence, without *652 any intent * * * to impose additional or unequal burdens upon other taxpayers * * *." City of Naples v. Conboy, Fla. 1965, 182 So.2d 412, 417. Defendant may not merely assert that an issue does exist, he must propound sufficient evidence to show the existence of that issue and he does not avoid this burden by attempting, as here, to impose a burden upon the plaintiff which does not exist.
Defendant's final argument is that the improvements in question were subject to a back assessment as improvements which had escaped taxation. First, he says the original taxes should be stricken as unlawful and reassessment permitted for the proper amount, citing City of Coral Gables v. Fluvia Corporation, Fla. 1938, 135 Fla. 544, 185 So. 621. This may be a good argument if the original assessment were indeed unlawful, but as earlier stated, the defendant has not even produced evidence let alone proven that the original assessment was unlawful. But defendant's primary argument in this theme is that the unassessed improvements have "escaped taxation" and should be back assessed. We do not contest defendant's argument that the tax assessor has the right and power to back assess, but we feel the property in question has not escaped taxation within the meaning of F.S. 1967, section 193.23, F.S.A. Okeelanta Sugar Refinery, Inc. v. Maxwell, Fla.App. 1966, 183 So.2d 567, defines what is meant by "escaped taxation." "To `escape taxation' means to get free of tax, to avoid taxation, to be missed from being taxed, or to be forgotten for tax purposes. Once the Tax Assessor has certified the tax roll and the tax levied thereon paid on particular described property, said property cannot again be taxed for that particular year." Okeelanta, supra, at 568. Defendant argues that Okeelanta did not contemplate the fact situation before the court, that the landowners had at least constructive knowledge of the inclusion of the buildings on the primary roll and did not object, further, the landowner must have known the final tax assessment for his land did not include the value of improvements and that since no value was placed on these improvements, they were not taxed and hence by all logic escaped taxation. But the law in Florida clearly established is that once the tax roll has been certified only clerical errors may be corrected and not mistakes of judgment. Dade County v. Budd, Fla.App. 1969, 219 So.2d 63; Allen v. Dickinson, Fla. 1969, 223 So.2d 310 and Homer v. Connecticut General Life Insurance Co., Fla.App. 1968, 211 So.2d 250. Therefore, even if defendant succeeded in showing a mistake in judgment, which he has not, that mistake could not be corrected at this time, especially in light of the fact that the taxpayer has paid the assessment. "Once the Tax Assessor has certified the tax roll and the tax levied thereon paid on particular described property, said property cannot again be taxed for that particular year. * * * `There must be a time for the cessation of the relation of the levying and assessing officers to the tax of each year, and there can be no better time than when the possession of the tax rolls pass to other parties. With the levy made, assessments completed, certificate of the board of county commissioners affixed to the tax rolls, the warrant to the tax collector issued, and the tax rolls delivered to the proper officials under the law, who are without authority to surrender them, it would not be possible for the assessment of the lands * * * to be changed * * *.'" Okeelanta Sugar Refinery, supra.
In another identical factual situation, the attorney general, Attorney General's Opinion No. 068-84, Biennial Report of the Attorney General (1968), addressed himself to the Comptroller's inquiry regarding the following situation and question:
"`In 1967, the Volusia County Tax Assessor assessed a certain taxpayer's land without adding the improvements thereon in the taxable amount of $180,000.00. The taxpayer was billed by land description for $7,298.90, which amount was promptly paid by the taxpayer.

*653 Thereafter, the Tax Assessor discovered that he had omitted the assessment for the improvements, which consisted of a motel and valued in the amount of $641,140.00. This motel had been valued by the tax assessor prior to certification of the 1967 tax roll, but was omitted through a clerical error.
"`May the Volusia County Tax Assessor now correct the 1967 assessment, resulting in the taxpayer being billed for an additional amount of $26,389.33, which amount represents the taxes due on the valuation of the improvements and which was omitted on the tax bill furnished the taxpayer?'
"Your question is answered in the negative."
The attorney general, in a lengthy opinion, cites several authorities from Florida, including the Okeelanta Sugar case, supra, as well as several authorities from other jurisdictions to support his position.
In Attorney General's Opinion No. 064-139, Biennial Report of the Attorney General (1964), the attorney general answered the following question of the Comptroller in the negative:
"May an assessor of taxes in Florida back-assess properties for years for which there were insufficient valuations of the properties assessed?"
The opinion recited that the undervaluation of properties is not an omission from taxation.
"* * * It is either taxed or is not taxed.
"In the latter event only has it `escaped taxation.'"
Finally, "the rule approved by the great weight of authority in this country is that the power to assess `omitted property' does not carry with it the power to revalue property already assessed." Hunt v. District of Columbia, 1939, 71 App.D.C. 143, 108 F.2d 10, 12, see also Palmer v. Beadle County, 1944, 70 S.D. 99, 15 N.W.2d 6; Tradewell Stores, Inc. v. Snohomish County, 1966, 69 Wash.2d 352, 418 P.2d 466 and 84 C.J.S. Taxation § 63, p. 167.
In conclusion, although a persuasive argument could be made that the building on the property assessed was "substantially completed," the question is so close that it must be held to be within the tax assessor's discretion. To hold otherwise would negate the assessor's discretionary power resulting in increased litigation where nuances of abused discretion appear. But even were it held discretion was abused, to change the assessment at this time the assessor's actions must have been fraudulent or illegal which was clearly not proven; or the property must have been held to have "escaped taxation," which as considered in detail above is simply not the case; or the resulting assessment must have been due to error of commission or omission within the narrow limits of F.S. 1967, section 192.21, F.S.A. as defined by case law, in this too defendant has failed. The summary judgment must be affirmed.
Affirmed.
REED, J., concurs.
WILLIAMS, ROBERT L., Associate Judge, dissents with opinion.
WILLIAMS, ROBERT L., Associate Judge (dissenting):
I must respectfully dissent from the majority opinion herein.
From the following uncontradicted facts, it is my opinion that the action of the prior Tax Assessor amounted to an illegal assessment:
1. Plaintiffs applied for a license from the Florida Hotel and Restaurant Commission, alleging that PRESIDENTIAL TOWERS was open for business on December 1, 1967.
*654 2. The then Tax Assessor, William Zinkil, noted that on December 16, 1967 "Presidential Towers, South Hollywood Beach, 2501 South A-1-A, Hollywood Beach, all painted outside, some occupancy at this time  they are finishing the touch-up, parking is paved. This one will be very well within, if not 100% awful close to it, for January 1. I am not making any inside investigation, but can see furniture on several floors."
3. On or about January 2, 1968, the then manager of the Presidential Towers advised that there were 128 tenants then in the building and that they were moving in tenants at the rate of 8 to 14 a day, that the delay in completing occupancy was because the manager was restricting freight to one elevator and because of lack of parking space for the moving vans.
4. The then Tax Assessor, Mr. Zinkil, placed the improvement value on the records of the Tax Assessor's Office on April 24, 1968, said improvement being $8,208,920.00. He prepared a primary tax roll, which was presented to the County Commissioners of Broward County, sitting as a Board of Equalization in July, 1968. No protest was made by the Plaintiffs to the valuation of Presidential Towers. The Board of Equalization adjourned sine die, having approved the roll with its valuation for the Presidential Towers. On July 23, 1968, Mr. Zinkil advised South Broward Hospital District that its total taxable values were $904,395,077.00. Based thereon, the District applied its tax millage of 1.081 to the 1968 tax roll.
5. On August 1, 1968, the building value was deleted from the tax roll in the amount of $7,762,070.00.
6. A tax bill was mailed to the Plaintiffs and the taxes imposed on the valuation of $540,000.00 were paid on November 29, 1968. There was no correction certificate presented to nor approved by the Board of County Commissioners.
From the foregoing set of facts there does exist a question of fact as to the actual legality of the tax assessment which would preclude the entry of the final summary judgment in favor of the Appellee-Plaintiffs.
NOTES
[1] See also Attorney General's Opinion No. 056-148, Biennial Report of the Attorney General (1956), wherein in answer to the question: "May the county assessor of taxes use an abbreviated or preliminary tax roll for submission to the tax equalization board, and then, after completion of equalization, prepare and extend the completed roll?" the opinion recited,

"Although the statutes today do not set out the form of the tax roll in as much detail as in former years § 345, Rev. Stat., 1892; § 512, Gen.Stat., 1906; and § 712, Rev.Gen.Stat., 1920) they still seem to contemplate the partial preparation of the tax roll before the equalization and its completion after equalization; and the making of the copies after the completion of the original." (Emphasis supplied.)
* * * * *
"Although the existing statutes seem to contemplate the preparation of an original, part of it to be prepared prior to equalization and the remainder after equalization, we do not think that the statutes in question are mandatory but are directory only § 192.21, F.S. [F.S.A.]; Overstreet v. Gordon, 121 Fla. 180, 163 So. 477; Rio Vista Hotel and Improvement Co. v. Belle Mead Development Corp., 132 Fla. 88, 182 So. 417; Goodman v. Carter, 158 Fla. 112, 27 So.2d 748). Although the statutes seem to contemplate the preparation of a portion of the original tax roll before equalization and the completion of it thereafter, when such statutes were enacted the use of mechanical means for the preparation of tax rolls was not in general use, if at all, we do not think that the preparation of a tax roll in the manner set out in the above request for opinion will invalidate the tax roll or in any way affect the collection of the taxes in the usual manner." (Emphasis supplied.)