PEARSON, Judge.
In a prior appearance (North Shore Realty Corporation v. Gallaher, Fla.App. 1957, 99 So.2d 255) we remanded this cause for trial. After trial the chancellor entered a final decree declaring the rights of the parties under a certain lease. The present appeal is from that final decree.
The appellant, North Shore Realty, was the plaintiff below. It sought the construction of certain portions of a lease demising a property known as “The Green Heron Hotel” for a term of fifty years November 29, 1943 (R. 111). North Shore Realty is the sublessee in possession. The principal appellee, The First National Bank of Miami as trustee, is the owner of the freehold for the benefit of Robert H. Gallaher and Clara E. Gallaher his wife, who were the original lessors. Other defendants having interests in the property are also appellees. The original lease contained a provision for the subordination of the fee simple title to the lien of a construction mortgage. The particular paragraph was:
*635 “V
“It is agreed and understood between the Lessors and the Lessee that the North One Hundred Feet (N 100') of the above-described property is vacant, and the Lessee herein is hereby given full power and lawful authority to improve the said North One Hundred Feet (N 100') of the above-described property, such improvement to cost approximately One Hundred Thousand Dollars ($100,-000.00), at anytime it may desire during the life of said lease, it being mutually understood that the Lessors will subordinate their rights under the within lease as to the said North One Hundred Feet (N 100') to the lien of a mortgage in an amount equal to fifty percent (50%) of the total cost of said improvements, said mortgage to be placed thereon to secure a loan for a period of time not to exceed ten (10) years.” (Emphasis supplied.)
Two other paragraphs of the lease (paragraphs numbered two and twenty-eight) are of importance in determining the questions raised:
“II
“ * * * The rental aforesaid shall be payable as follows: $5,000.00 upon the date of the execution and delivery of this lease shall represent the rental accruing and becoming payable for the first year of the rental term herein created, and the rental for the remainder of the term shall be payable in two (2) equal semi-annual payments in advance on each succeeding first day of November and first day of May throughout the remainder of the term provided, however, that after the expiration of the fourth (4th) year of the within lease, and within that time the Lessee has failed to place improvements on the North One Hundred Feet (N 100') of the above-described property, costing at least One Hundred Thousand Dollars ($100,000.-00), then in that event, the Lessee agrees to pay rent thereafter as follows : $10,000.00 on November 1st and $10,000.00 on May 1st during the fifth (5th) year of the said lease, and thereafter the sum of $5,000.00 on November 1st and May 1st throughout the remainder of the term, provided, however, that the additional payments provided hereunder during the fifth (5th) year shall be considered as security for the payment of future rents until such time as improvements are placed on the North One Hundred Feet (N 100') costing at least One Hundred Thousand Dollars ($100,000.-00), and upon completion of same, then the $10,000.00 paid during the fifth (5th) year as security shall be immediately credited to the Lessee for the rental of the year immediately following the completion and acceptance of the improvement by the Lessee. In the event that the Lessee fails to make any improvement of One Hundred Thousand Dollars ($100,000.00) or more during the period of this lease, then the sum of $10,000.00 as security paid by the Lessee during the fifth (5th) year shall be applied and credited as the last year’s rental of the Lessee under the terms of this lease.” (Emphasis supplied.)
“XXVIII
“The Lessee is given the privilege of placing on the North One Hundred Feet (N 100') of the above-described property improvements at a cost of at least One Hundred Thousand Dollars ($100,000.00) to the Lessee, at anytime during the life of the within lease, and in the event such improvements are so made after the expiration of two (2) years from the date of its acceptance by the Lessee, then the rental for the remaining term of said lease shall be Twelve Thousand Dollars ($12,000.00) yearly, payable in two (2) equal semi-annual payments *636 on November 1st and' May 1st of each year thereafter, and in the event the Lessee desires to make such improvements, then in that event the Lessee shall sufficiently indemnify the Lessors against liens for labor and materials accruing by reason of the construction of said improvements by a good and sufficient completion bond in a reasonable sum, conditioned that it will protect the Lessors against all bills for labor and materials, subcontractors’, contractors’, and architects’ fees that may accrue in the construction of said improvements.” (Emphasis supplied.)
North Shore Realty presents the question whether under these provisions, the lessors are obligated to subordinate their title to the construction money mortgage provided that the loan is for more than $100,000.
Upon this matter the court found as follows:
“The Court has been requested to declare the rights of the parties with respect to the subordination required of the lessors under Paragraph V of the original lease for improvements to be placed on the North 100 feet. The Court finds that the lessors are required to subordinate only to a mortgage of approximately Fifty Thousand Dollars ($50,000.00). The Court has taken note of Paragraph II and XXVIII of the lease, but finds that the limitation contained in Paragraph V is controlling and that it was the intent of the parties to the original lease that subordination be limited to 50% of approximately One Hundred Thousand Dollars ($100,000.00).”
In order to demonstrate an ambiguity, North Shore Realty alleged that the quoted terms of the lease are contradictory. However, it is apparent that there is no real conflict between them. The provision in paragraph 5, which is the subordination agreement, reads in part as follows: “it being mutually understood, that the lessors will subordinate their rights under the within lease as to the said N 100' to the lien of a mortgage in the amount equal to 50% of the total cost of said improvements, * * This language by itself would not present an ambiguity. The only limitation upon the right of subordination is contained in the next phrase which provides: “Said mortgage to be placed thereon to secure-a loan for a period of time not to exceed 10 years.” The controversy occurred because of the inclusion of an entirely separate provision which was in that portion of the lease discussing the right of the lessee to improve the vacant N 100' wherein it is said “such improvement to cost approximately $100,000.00.” This provision limits the right to improve the property below á minimum cost and is not a. limitation upon the right of subordination.
When thus viewed the remaining-portions of the lease, particularly paragraphs Nos. 2 and 28 as above set out,, do not arrive at an ambiguity but rather reaffirm the assertions of paragraph No. 5. Both paragraphs, Nos. 2 and 28, clearly demonstrate an express concern by the lessors that at least $100,000 should' be expended upon the property in the-event of improvement. We therefore hold' that the interpretation placed upon the-lease provision by the chancellor was against the intention of the parties as-found in the unambiguous terms of the-contract itself and his holding in this regard is reversed. See Sisco v. Rotenberg, Fla. 1958, 104 So.2d 365, 368. It follows-that where the terms of a lease are certain and clear, it is improper for a trial court to construe the lease by resorting' to parol and extrinsic evidence. Ridgefield Investors v. Mae Ellen, Inc., Fla. 1952,. 57 So.2d 842. Therefore, notwithstanding-the admission of such evidence by the trial judge, we find it unnecessary to review this evidence.
*637 The appellant has urged two other questions, one having to do with the provision of the lease as to the right to demolish the existing building, and the other as to the disposition of certain insurance proceeds. The appellant has frankly admitted in his brief that he has been unable to successfully maintain his position as to the first question under the law. We find that the second question likewise is without merit.
The decree appealed from is reversed only insofar as it holds that the plaintiff, North Shore Realty Corp., is limited to a mortgage of approximately $100,000 for the improvement of the property covered by the lease. In all other particulars the decree is affirmed. The decree is reversed in part and affirmed in part and the cause is remanded to the chancellor for the entry of a decree in accordance with this opinion.
Affirmed in part and reversed in part.
HORTON, C. J., and CARROLL, CHAS., J., concur.