257 So.2d 629 (1971)
LEASECO, INC., a Corporation, and Transit Casualty Company, Appellants,
v.
Ernest D. BARTLETT, As Husband of Marsha Gail Bartlett, Deceased, et al., Appellees.
No. 70-1031.
District Court of Appeal of Florida, Fourth District.
December 16, 1971.
Rehearing Denied February 29, 1972.
*630 Fred M. Peed and Duncan B. Dowling, of Gurney, Gurney & Handley, Orlando, for appellants.
Ernest H. Eubanks and Robert A. Hannah, of Pitts, Eubanks, Ross & Rumberger, Orlando, for appellee Bartlett.
Monroe E. McDonald, of Sanders, McEwan, Mims & McDonald, Orlando, for appellee Belford Trucking Co.
OWEN, Judge.
Marsha Gail Bartlett, wife of appellee Ernest D. Bartlett, was killed when the automobile which she was operating was struck head-on by a 1966 Mack Truck. The husband's subsequent wrongful death action was against Bobby Dale Bowman, the operator of the truck, and certain others alleged to be legally responsible for the negligent operation thereof. Among these was the appellant, Leaseco, Inc., alleged to be the owner of the truck, and Transit Casualty Co., Leaseco's liability insurance carrier. These latter two defendants appeal from the final judgment for the plaintiff husband entered upon a jury verdict.
In its answer to the complaint, Leaseco, Inc., denied that it was the owner of the truck at the time of the fatal accident. *631 Prior to trial, plaintiff filed his motion for a summary judgment in his favor on this specific issue. Simultaneously, Leaseco, Inc., filed its motion for summary judgment in its favor on the same specific issue. Each motion asserted that there was no genuine issue of fact on this issue, and that the movant was entitled to judgment thereon as a matter of law. The court entered an order which granted plaintiff's motion and denied Leaseco's, declaring that Leaseco's ownership of the truck at the time of the accident was determined by the court as a matter of law. Appellants have assigned as error the entry of this partial summary judgment.
Despite their representations to the trial court that there were no genuine issues of material fact bearing on the question of Leaseco's ownership of the truck, appellants now assert on this appeal that the facts on this issue were in conflict and hence the trial court should have left such determination to the trier of fact rather than having determined this issue by means of summary judgment. Understandably, appellee urges us to apply the principle enunciated in Wilson v. Milligan, Fla.App. 1962, 147 So.2d 618 and Glens Falls Insurance Co. v. Fields, Fla.App. 1966, 181 So.2d 187 under which appellants would be estopped to assert on this appeal the existence of genuine factual issues on the question of Leaseco's ownership of the truck when they had asserted in the trial court the nonexistence of genuine factual issues on that same specifc question. While the rationale of the cited cases is somewhat appealing, we find no necessity to consider its applicability as we reach our decision in this case on an entirely separate basis.
All parties agree that on or about January 17, 1968, Leaseco, Inc. was either the legal or equitable owner of the truck. On that date Leaseco, Inc. entered into a written "Lease Agreement" with George Bowman, Jimmy Bowman and Bobby Dale Bowman, d/b/a George Bowman & Sons, whereby the Bowmans obtained possession of the truck from Leaseco, Inc. It was under and by virtue of this agreement that Bobby Dale Bowman was in possession of the truck at the time of the fatal accident some 10 months later. The crucial issue can be simply stated: Did the parties intend the "Lease Agreement" to be merely an equipment lease for the stipulated term of 34 months, whereby Leaseco, Inc., remained the owner of the truck, or did the parties intend the instrument to be a conditional sale, whereby ownership passed to the Bowmans and Leaseco, Inc. merely retained some type of security interest for the unpaid balance of the purchase price?
At hearing on the motion for summary judgment, the written document was before the trial court, its authenticity and execution conceded by all parties. The language contained therein is clear, plain and unambiguous. Entitled "Lease Agreement", the agreement designated Leaseco as "OWNER" and George Bowman & Sons as "LESSEE" and states that the Owner lets and leases to Lessee, upon terms and conditions set forth, certain "leased equipment", thereafter describing the 1966 Mack truck. Numerous times throughout the agreement the parties are respectively designated as "Owner" and "Lessee". Notably absent from the agreement are the designations "Buyer" and "Seller" or terms of similar import as are generally used to identify parties to a sale of personal property. The term of the agreement was for a definite period of 34 months with no provisions whatever giving the Lessee an option to purchase, either during the term or upon termination. On the contrary, the agreement expressly provided that upon termination the "leased equipment" was to be returned to the Owner in as good condition as when received by the Lessee, excepting ordinary wear and tear. The Lessee was required to procure and maintain in force liability insurance insuring both the Owner and the Lessee. The agreement provided that in registering the leased equipment with the authorities in any state, Lessee would be shown as the registered owner and the Owner as the legal owner. *632 Other provisions relating to such matters as (a) restrictions on the Lessee's assignment without the Owner's consent, (b) the Lessee's obligation to bear the expense of all necessary repairs, maintenance and replacement, (c) the Owner's right to inspect, and (d) the procedures upon default in payment of the rental or other default, were all equally as consistent with the rights customarily reserved by a lessor as with those reserved by a vendor under a conditional sales contract. Finally, the agreement expressly provided that it included the entire agreement of the parties respecting the subject matter thereof.
The instrument being unambiguous, the parties' intention is to be deduced from the language employed. Smith Engineering & Construction Co. v. United States Fidelity & Guaranty Co., Fla.App. 1967, 199 So.2d 302, and North Shore Realty Corp. v. Gallaher, Fla.App. 1959, 114 So.2d 634. Here, the language clearly established that the parties intended the agreement to be that which it plainly purported to be, i.e., a lease agreement. Sanders v. National Acceptance Co., 5 Cir.1967, 383 F.2d 606; Matter of the Atlanta Times, D.C.N.D.Ga. 1966, 259 F. Supp. 820; Transport Rental Systems, Inc. v. Hertz Corp., Fla.App. 1961, 129 So.2d 454; and Barnett v. Butler, Fla. App. 1959, 112 So.2d 907.
The factual issues which appellants now assert to have existed as a bar to disposition by summary judgment are all matters extrinsic to the "Lease Agreement". For example, certain officers of Leaseco, Inc. testified upon deposition (1) that Leaseco, Inc., intended the transaction with the Bowmans to be a lease-purchase arrangement whereby Bowmans would acquire title upon completion of the rental payments notwithstanding the absence of an provision in the agreement for such, (2) that Leaseco, Inc., had not taken any depreciation on the vehicle after the contract with the Bowmans had been executed, and (3) that Leaseco, Inc., thereafter carried the vehicle on its records as a "sold" vehicle. Jimmy Bowman testified on deposition that after he brought the truck to Florida (from Leaseco's place of business in Tennessee) he operated as a contract carrier with Belford Trucking Co., Inc., under the latter's I.C.C. permit, representing to Belford at that time that the Bowmans owned the truck. Of course, there was other evidence extrinsic to the Lease Agreement which tended to show that the transaction was simply that of a lease, viz: the evidence which established that after the fatal collision, Leaseco, Inc., had the truck hauled by wrecker to its place of business in Nashville, Tennessee where the truck was repaired and put back into lease service, the collision insurance having been paid to Leaseco, Inc.
Obviously, if these extrinsic matters had been proper evidence bearing upon the intention of the parties to the transaction, factual issues would have existed. But all such extrinsic evidence which sought to contradict, vary or modify the complete and unambiguous written agreement between the parties was clearly inadmissible under the well-established parol evidence rule, no extended discussion of which need be had here. See generally 13 Fla.Jur., Evidence, §§ 382 et seq. On motion for summary judgment factual issues may not be created by reference to matters which at trial would be wholly inadmissible in evidence. Page v. Staley, Fla.App. 1969, 226 So.2d 129; Lake v. Konstantinu, Fla. App. 1966, 189 So.2d 171; and Evans v. Borkowski, Fla.App. 1962, 139 So.2d 472.
Appellants' next point is that the court erred in granting plaintiff's motion in limine by which the defendants were prohibited from offering any evidence to show the possibility of plaintiff's remarriage. In an action for wrongful death of a spouse, evidence that the surviving spouse has remarried is irrelevant and therefore inadmissible. Seaboard Coast Line Ry. v. Hill, Fla.App. 1971, 250 So.2d 311, cert. granted Fla. 1971. If evidence of remarriage of the plaintiff spouse is inadmissible, evidence of the possibility of remarriage *633 would be inadmissible, not only because of being irrelevant, but also because of being too speculative and conjectural.
Finally, appellant complains that the court erred in admitting over objection evidence of the deceased wife's earnings outside of the household. In the case of Lithgow v. Hamilton, Fla. 1954, 69 So.2d 776, our Supreme Court reviewed the elements of damages recoverable by a husband in an action for the wrongful death of his wife. Included therein as an element was the pecuniary value of the services which a wife was accustomed to performing without compensation in the husband's business, which services would have to be replaced by hired services. Subsequently, in the case of Atlantic Coastline R.R. Co. v. Braz, Fla. 1967, 196 So.2d 109, it was held that this identical element of damage was recoverable by the husband when the deceased wife's services were being performed for the husband's family corporation. The element of damage involved is the economic loss of the wife's services. If the wife had performed the service in the husband's business without compensation, the pecuniary value of such services would be measured by the cost of hiring the services performed. From a legal standpoint, the husband suffers exactly the same economic loss upon death of the wife when she was regularly contributing to the family's income earnings from a job unconnected with the family business. In the one case the husband's expenses are increased by the cost of hiring replacement services whereas in the other case the family's total income is decreased to the extent of the loss of contribution theretofore made by the wife's earnings from outside sources. The net economic effect on the husband is the same, and there is no logical reason why the husband may not recover as an element of damages the loss of the value of the wife's services even though measured by salary from outside employment rather than gratuitous services in the husband's business.
Although appellants cite to us the case of Ellis v. Brown, Fla. 1955, 77 So.2d 845, as being persuasive, they candidly admit that the court did not there have before it the question of whether the trial court had properly disallowed in the husband's wrongful death action his claim for loss of his wife's future earnings. The Ellis case was concerned solely with the administrator's action under the Survival Statute and the question of the elements of damages recoverable by a husband for the wrongful death of his wife was not there decided.
Appellants suggest that in any event the husband was not entitled to show the gross amount of the wife's earnings from sources outside the husband's business, since part of the earnings were subject to being withheld for income tax purposes and of course a part of the wife's earnings would necessarily be offset by the cost of her maintenance if she were living. As to the cost of the wife's maintenance as a valid offset to the pecuniary value of the services performed by her for or on behalf of her husband, evidence relating thereto certainly would be relevant, but the absence of evidence relating thereto does not render inadmissible competent evidence as to the wife's earnings. As to the argument that the testimony concerning the wife's earnings should have been limited to the net earnings after deduction for federal income taxes rather than gross earnings, this is answered adversely to appellant by the decision in St. Johns River Terminal Co. v. Vaden, Fla.App. 1966, 190 So.2d 40.
Immediately prior to trial plaintiff entered into a written agreement with all defendants except appellants, by virtue of which the agreeing defendants created a fund of $65,000 which was paid to plaintiff. In consideration thereof, plaintiff agreed that he would not attempt to collect from Belford Trucking Company, Inc., any further sum of money regardless of the amount of the verdict that might be rendered or any final judgment that he might *634 obtain against Belford Trucking Company, Inc. Plaintiff also agreed therein that regardless of the amount of a verdict and judgment against the defendants George F. Bowman, Jimmie Bowman and Bobby Dale Bowman, plaintiff would look to Leaseco and/or Transit Casualty Company to satisfy such judgment and would not attempt to collect any deficiencies from the personal assets of any of the parties to the agreement. Plaintiff also agreed, as the person legally entitled to act as the personal representative of the estate of Marsha Gail Bartlett, deceased, that should any legal action on behalf of the estate be instituted in the future, none of the defendants signing the agreement would be named as defendants in that action. Finally, it was agreed that none of the provisions therein would in anywise release or inure to the benefit of Leaseco, Inc., or Transit Casualty Co., nor would any such provisions constitute a waiver of any right which any of the parties might have against Leaseco, Inc., or Transit Casualty Co. The agreement was disclosed to the court and to the attorneys for appellants prior to trial, but the agreement was not disclosed to the jury and all defendants participated in the trial of the cause as though the agreement did not exist. The jury returned a verdict in favor of the plaintiff and against all defendants in the amount of $117,700.00, and final judgment was entered thereon. The court thereafter entered its order granting appellants' motion for a $65,000.00 setoff against the judgment under provision of F.S. Section 768.041, F.S.A. The order granting this motion has been cross-assigned as error by plaintiff-appellee Bartlett.
Plaintiff-appellee contends that the agreement is clearly not a release within the definition of that term as set out in Atlantic Coastline R.R. Co. v. Boone, Fla. 1956, 85 So.2d 834, as "an outright cancellation or discharge of the entire obligation as to one or all of the alleged joint wrongdoers". Rather (he contends), the agreement under consideration has the operative effect of the agreement held not to be a release in the case of Booth v. Mary Carter Paint Co., Fla.App. 1967, 202 So.2d 8. Understandably, appellants argue that the agreement in this case is not at all similar to that in the Mary Carter case, but was a release in legal effect irrespective of the name given the document and that we should so treat it as did the court in Thomas Air Conditioning and Refrigeration Co. v. Bankston, Fla.App. 1970, 231 So.2d 272.
Although we have summarized and paraphrased the relevant portions of the agreement, rather than quoted them verbatim, we think it abundantly clear that the legal effect of the agreement was such as to bring it squarely within the scope of the legislative intent of Section 768.041, F.S. 1969, F.S.A. In exchange for $65,000 which was paid to plaintiff-appellee, he covenanted to forego the right to collect from any of the agreeing defendants any judgment he might obtain against any of them. The consideration received by plaintiff-appellee (the sum of $65,000) and the consideration received by the defendants signing the agreement (plaintiff's agreement to forego enforcement against them of any judgment recovered) were firm and unconditional. While the agreement may not have technically discharged the liability of the defendants signing the agreement (since the judgment apparently remains of record against them jointly and severally) they have nonetheless "bought their peace" and have contractual assurance that plaintiff-appellee will not seek to enforce the judgment against any of them. This is a release or covenant not to sue within the contemplation of F.S. Section 768.041, F.S.A.
Neither the appellants nor the cross-appellant having demonstrated error, the final judgment for appellee Bartlett, as modified by the order allowing setoff, is affirmed.
Affirmed.
*635 REED, C.J., concurs.
CROSS, J., dissents, with opinion.
CROSS, Judge (dissenting in part):
I respectfully dissent from that portion of the majority opinion which affirms the trial court's order granting defendants' motion for a setoff under the provisions of Section 768.041, F.S. 1969, F.S.A.
By its own terms, § 768.041, F.S.A., applies only to instances involving joint or several tortfeasors. Therefore, the starting point for analysis should be a determination of whether the defendants are in fact joint tortfeasors as both were proceeded against jointly.
It is undisputed that Leaseco, as the owner of the truck, is jointly and severally liable with the other defendants to plaintiff. Southern Cotton Oil Co. v. Anderson, 1920, 80 Fla. 441, 86 So. 629; Fincher Motor Sales, Inc. v. Lakin, Fla.App. 1963, 156 So.2d 672. It does not follow, however, that because joint and several liability is imposed on the vehicle owner, he necessarily is to be termed a "joint tortfeasor". Where damages are suffered by a third person as a result of the negligent operation of the vehicle while being driven with the owner's knowledge or consent, the operator is the tortfeasor guilty of the negligent act which proximately causes the damages suffered by a plaintiff, while the owner is vicariously liable for the damages.[1] Gerardi v. Carlisle, Fla.App. 1969, 232 So.2d 36, 41.
In the few jurisdictions which have considered the question of whether the owner of a vehicle is a joint tortfeasor with the operator thereof who negligently injures a third person, a split of authority has developed. See Annot., 92 A.L.R.2d 532-540, and the cases there set forth. In Florida, several cases have stated that the owner of a vehicle does occupy the status of joint tortfeasor with the negligent operator of the vehicle. Stembler v. Smith, Fla.App. 1970, 242 So.2d 472; Gerardi v. Carlisle, supra. See also Hertz Corporation v. Hellens, Fla.App. 1962, 140 So.2d 73.
These statements in the above cited cases do not appear to me to be well reasoned. Southern Cotton Oil Co. v. Anderson, 1920, 80 Fla. 441, 86 So. 629, is cited as authority for the proposition that the owner and the operator of a vehicle are joint tortfeasors. However, a close reading of the Southern Cotton Oil Co. case reveals that what is established there is that the owner and operator are jointly and severally liable, not that they are joint tortfeasors. The mere fact that one may be jointly and severally liable does not make one a joint tortfeasor, where the liability is vicarious. See generally Weaver v. Stone, Fla.App. 1968, 212 So.2d 80, 84.
The owner of a vehicle in such a case is simply not a tortfeasor, inasmuch as he has been guilty of no negligence. The imposition of vicarious liability on the owner stems from the sound public policy of promoting safety and financial responsibility on the highways. This public policy imposes liability on the owner in spite of his lack of negligence, rather than because of his guilt of negligence. Cf. Watkins v. Southcrest Baptist Church, Tex. 1966, 399 S.W.2d 530.
Florida courts have long recognized, in cases where the owner of a vehicle who has suffered a recovery against him sues the operator for indemnity, that the owner's liability is to some extent secondary and that the owner is not in pari delicto with the operator. The owner, therefore, has not been considered a joint tortfeasor barred from seeking contribution. E.g., Hertz Corp. v. Ralph M. Parsons Co., M.D.Fla. 1968, 292 F. Supp. 108, 111 (applying Florida law); Fincher Motor Sales, Inc. v. Lakin, *636 supra, 156 So.2d at 671. It is somewhat illogical to hold that an owner is a joint tortfeasor for one purpose, but is not for another purpose.
From the above, I would conclude that Leaseco, the owner of the truck in the instant case, was not a joint tortfeasor, nor even a tortfeasor at all. From this determination, several consequences flow. If the owner of the vehicle is not to be classed as a tortfeasor, § 768.041, F.S.A., is not applicable. The better reasoned principle appears to me to be that, because the liability of the owner is purely derivative, he should not be exposed to a greater amount of damages than is the actively negligent operator. Thus, where the plaintiff elects to proceed against the operator and obtains a recovery, through judgment or settlement, the owner should not subsequently be exposed to liability in an amount greater than that recovered against the operator in the first instance. This principle would not apply where the plaintiff first recovers against the owner and subsequently elects to proceed against the operator, inasmuch as the operator's liability, due to his active negligence, is primary rather than derivative.
In the instant case, since plaintiff settled with the actively negligent defendants for $65,000, plaintiff's total recovery should be limited to that amount. Leaseco's liability, being derivative, cannot exceed that of the operator of the truck. The trial court erred in allowing a setoff under the provisions of § 768.041. Rather, the trial court should have entered a judgment against all defendants, jointly and severally, in the amount of $65,000.
I would therefore reverse the final judgment on this point, and remand for the entry of a judgment in accordance with the views hereinabove expressed. In all other respects, I concur with the majority's affirmance of the final judgment.
NOTES
[1] To be distinguished are those situations in which the owner of the vehicle is himself guilty of negligence in entrusting the vehicle to an incompetent, reckless or careless driver. 8 Am.Jur.2d, Automobiles and Highway Traffic § 571. No such negligence on the part of the owner appears in the instant case.