### WAIKIKI PARTNERSHIP, et al v. TAX ASSESSOR, et al.
No. 73-19056.
Circuit Court, Dade County.
August 7, 1974.

Andrew C. Hall of Frates, Floyd, Pearson, Proenza & Richman, Miami, for the plaintiffs.

Stuart Simon, County Attorney, Jon I. Gordon, Assistant County Attorney, for the defendants.

JACK M. TURNER, Circuit Judge.

*Final partial summary judgment:* This cause came on to be heard upon defendants' motion for partial summary judgment with respect plaintiff's claim of intentional tax discrimination, and upon defendants' oral motion to strike the affidavit of Bennett Lifter, and the court after hearing argument of counsel, reviewing the record, and being otherwise fully advised in the premises, finds as follows —

This cause commenced with a taxpayer's complaint in which it was alleged in substance that the 1973 assessment of this property was in excess of the property's fair market value; and, in addition, the complaint alleges that the tax assessor intentionally discriminated against the plaintiff by assessing the property at a greater percent of fair market value than he assessed comparable property. The defendants moved to dismiss the complaint for failure to join the board of tax adjustment as a necessary and indispensable party. Thereafter, the plaintiff amended its complaint to add the board of tax adjustment. Subsequently, the defendants answered the complaint and the amended complaint in which they denied all material allegations. As an affirmative defense, the defendants alleged that the complaint failed to allege a cause of action for discrimination.

The defendants initiated discovery by way of propounding interrogatories and a request for production of documents. By stipulated order, the defendants were permitted to amend their answer in order to raise the additional affirmative defense that the complaint failed to state a cause of action in that it failed to allege compliance with the provisions of §95.08, Florida Statutes.

Thereafter, on April 30, 1974, the defendants moved for a summary judgment with an attached affidavit by the assessor, A. H. Blake, Jr. This motion for summary judgment was originally specially set for hearing on June 4, 1974, but at the request of counsel

for the plaintiff, the defendants voluntarily reset the motion for June 28th. Again, this motion was reset for July 19th, at the directions and convenience of the court.

The plaintiff, on July 8th, moved for a continuance of the hearing on summary judgment, in part, upon the grounds that it had been unable to obtain the affidavit of David Bishop — its expert appraiser. In opposition to defendants' motion for summary judgment, plaintiff on July 12th, filed the affidavits of Edward Fox. On July 18th, counsel for the plaintiff filed his affidavit in support of his motion for a continuance. By its order dated July 26th, this court granted plaintiff's motion for a continuance until July 29th, in order to afford the plaintiff additional time to procure Mr. Bishop's affidavit.

The affidavits of David Bishop and of Bennett Lifter were served upon the defendants on July 26th, by hand.

At the commencement of the hearing on defendants' motion for summary judgment, counsel for the defendants orally moved to strike the affidavit of Bennett Lifter upon the grounds that it was unauthorized and that the court's order granting plaintiff a continuance did not permit filing of the same. The court reserved ruling on the defendants' motion to strike. Moreover, counsel for the defendants announced that he intended only to argue for partial summary judgment with regard to the plaintiff's claim of intentional tax discrimination.

The primary issue before the court is —

> *Whether a genuine material issue of fact exists with regard to whether the plaintiff has overcome the tax assessor's presumption of correctness and good faith insofar as the plaintiff's allegation of intentional discrimination is concerned.*

The tax assessor's actions are presumed by law to have been performed correctly and in good faith. District School Board of Lee County v. Askew, 278 So.2d 272 (Fla. 1973). Camp Phosphate Co. v. Allen, 77 Fla. 341, 81 So. 503 (Fla. 1919); accord, Wells v. Thomas, 78 So.2d 378 (Fla. 1954); Exchange Realty Corporation v. Hillsborough County, 272 So.2d 534 (2d D.C.A. Fla. 1972); Tampa Coca-Cola Bottling Company v. Walden, 230 So.2d 52 (2d D.C.A. Fla. 1969). In order to overcome the tax assessor's presumptions of correctness and good faith with regard to the claim of intentional discrimination, the plaintiff must allege and prove by *clear* and *positive* evidence both of the following —

1. That all or most of the taxable property in Dade County is assessed at a particular percentage of its fair market value while the plaintiff's property in comparision is

assessed at a manifestly and grossly higher percentage of its fair market value; [1] *and*

2. That the tax assessor intentionally and systematically pursued a method of assessment which resulted in the violation of the principles of equality and uniformity in taxation. [2]

In effect, the plaintiff must first prove that it has suffered severe damage by having to bear substantially more than its just burden of taxation and secondly, that the damage suffered was a *result* of the tax assessor's *intentional* and *systematic* pursuit of a *method* of assessment which was unjust and arbitrary. The cause of action for intentional tax discrimination is analogous to a cause of action for an intentional tort.

As the court stated in Camp Phosphate Co. v. Allen, [3] 77 Fla. 341, 81 So. 503 (1919) —

". . . mere errors of judgment by officials will not support a claim of discrimination. There must be something more — something which in effect amounts to an *intentional* violation of the essential principle of practical conformity." Supra, at 507 (emphasis added) ; see City of Tampa v. Palmer, supra.

---

1. Dade County v. Salter, 194 So.2d 587 (Fla. 1967) ; Cosen Inv. Co. v. Overstreet, 17 So.2d 788 (Fla. 1944) ; Schooley v. Sunset Realty Corp., 185 So.2d 1 (2d D.C.A. Fla. 1966) ; accord, Southern Bell Telephone & Telegraph Co. v. County of Dade, 275 So.2d 4 (Fla. 1973) ; see District School Board of Lee County v. Askew, 278 So.2d 272 (Fla. 1973). Proof that some similar properties are assessed at a lesser percentage of value is insufficient to show the intentional discrimination necessary for relief. Cosen Inv. Co. v. Overstreet, supra.; see Dade County v. Salter, supra, at 591; Schooley v. Sunset Realty Corp., supra at 5.

2. District School Board of Lee County v. Askew, 278 So.2d 272 (Fla. 1973) ; City of Tampa v. Palmer, 105 So. 115 (Fla. 1925) ; Camp Phosphate Co. v. Allen, 77 Fla. 341, 81 So. 503 (1919) ; Exchange Realty Corp. Hillsborough County, 272 So.2d 534 (2d D.C.A. Fla. 1973).

3. Camp Phosphate Co. v. Allen was cited with approval in Southern Bell Telephone & Telegraph Co. v. County of Dade, supra., at 10. Moreover, in Power v. Kelly, 223 So.2d 307 (Fla. 1969) the court stated —

"But mere excessive valuation, resulting solely from inadvertence or mistaken judgment, and unaffected by any element of illegality in matter of law, or intentional or other abuse of authority, or fraud, express or implied, will not suffice as a ground of equitable jurisdiction. City of Tampa v. Palmer, 89 Fla. 514, 105 So. 115." Supra, at 307.

Further, in Exchange Realty Corp. v. Hillsborough County, 272 So.2d 534 (2d D.C.A. Fla. 1973), with regard to a claim of intentional tax discrimination, the court affirmed that portion of the trial court's order dismissing the complaint and stated —

". . . it is well settled that the tax assessor is accorded a wide discretion in fixing a valuation on property for tax purposes and courts will not disturb such assessed valuations unless there is a clear and positive showing of arbitrary action or intentional discrimination that results in a manifest and gross inequality as to amount in law to a fraud." Supra, at 535.

In addition, the Supreme Court of Florida in District School Board of Lee County v. Askew, supra, held —

"The tax assessor is, of necessity, provided with great discretion (Harbond, Inc. v. Anderson, 134 So.2d 816 (Fla. App. 2d 1961)), due to the difficulty in fixing property values with certainty. Schleman v. Connecticut General Life Ins. Co., supra, and Powell v. Kelly, supra. The discretion is of such a quality that —

'[A] mere showing that the two assessments are different does not make one of them necessarily invalid; especially in view of of the fact that these two tax rolls were prepared by different assessors.' Keith Investments, Inc. v. James, 220 So.2d 695, p. 697 (Fla. App. 4th, 1969).

"The proper test for measuring the validity of a tax assessor's action is set out in detail in Powell v. Kelly, supra —

'While the assessor is accorded a range of discretion in determining valuations for the purpose of taxation *when the officer proceeds in accordance with and substantially complies with the requirements of law designated to ascertain such values,* yet, if the steps required to be taken in making valuation are not in fact and in good faith actually taken, and the valuations are shown to be essentially unjust or unequal abstractly or relatively, the assessment is invalid.' 223 So.2d 305, pp. 307-308." Supra, at 276.

In light of the above discussion concerning the *substantive law* with regard to claims of intentional tax discrimination, the court will now briefly discuss under what conditions it may *procedurally* grant defendants' motion for summary judgment.

The court in Harvey Building, Inc. v. Haley, 175 So.2d 780 (Fla. 1965), stated —

"The initial burden, therefore, is upon the movant. When he tenders evidence sufficient to support his motion, then the opposing party must come forward with counter-evidence sufficient to reveal a genuine issue. The movant, however, does not initially carry the

burden of exhausting the evidence pro and con, or even examining all of his opponent's witnesses. To fulfill his burden he must offer suffcient admissible evidence to support his claim of the non-existence of a genuine issue. If he fails to do this his motion is lost. If he succeeds, then the opposing party must demonstrate the existence of such an issue either by countervailing facts or justifiable inferences from the facts presented. If he fails in this, he must suffer a summary judgment against him." Supra, at 783.

In that case the court held that it was insufficient for the opposing party merely to assert that an issue does exist. [4] The court adopted the holding in Hardcastle v. Mobley, [5] 143 So.2d 715 (3d D.C.A. Fla. 1962), and stated —

"In *Hardcastle* the losing party in a summary judgment contended that he 'was entitled to an inference that he had other evidence which could be presented.' The Third District Court decided otherwise in holding that 'the party moved against by summary judgment * * * must come forward with facts contradicting those submitted by the movant and demonstrating a real issue between the parties.' Pritchard v. Peppercorn and Peppercorn, Inc., Fla. 96 So.2d 769." Supra, at 782.

---

[4] More recently, the court in Turner Produce Company, Inc. v. Lake Shore Growers Cooperative Association, 217 So.2d 856 (4th D.C.A. Fla. 1969), writ discharged, 228 So.2d 276 (Fla. 1969) reiterated that a mere assertion that an issue of fact does exist or that the non-moving party lacks knowledge is insufficient to preclude the granting of a motion for summary judgment.

In that case the appellate court affirmed the trial court's order granting summary judgment in favor of the plaintiff and against the defendant debtor and surety. The appellate court stated that inferences of fact sufficient to preclude summary judgment may only be drawn from evidence proffered at the hearing for summary judgment. See also Leaseco, Inc. v. Bartlett, 257 So.2d (4th D.C.A. Fla. 1972).

[5] The court in Locke v. Stuart, supra, cited with approval the holding of Engl v. Aetna Life Insurance Co., 2 Cir. 139 F.2d 469, 473, which discussed the effect of a statutory presumption on a motion for summary judgment. In that case, the defendant insurer, in an action to recover on an insurance policy, moved for summary judgment and submitted proof that the insured had consulted certain physicians and that the plaintiff beneficiary had prevented the defendant from establishing the nature of those consultations. Under applicable statutory law, the failure of the insured or his beneficiary to make full disclosure as to consultations with physicians was presumed to be material to the validity of the insurance contract. In resisting the motion for summary judgment, the plaintiff

The first issue that the court must decide is whether the defendants, in the first instance, have carried their burden by demonstrating, prima facie, that no genuine issue of material fact exists. Both the presumptions in law that the tax assessor properly and in good faith performed his statutory duty, coupled with the affidavit and deposition of A. H. Blake, Jr., the tax assessor, that evidences that he "did not intentionally, knowingly, or willfully, deliberately, or systematically assess the subject properties at a higher percentage of fair market value than any other property similarly situated in Dade County and assessed in 1973," prima facie establishes that there is no genuine material issue of fact regarding the alleged intentional tax discrimination. The presumptions in law relieve the defendants of the necessity of establishing the existence of the basic facts giving rise to the presumptions. Leonetti v. Boone, 74 So.2d 551 (Fla. 1954); Locke v. Stuart, 113 So.2d 402 (1st D.C.A. Fla. 1959). The plaintiff was obliged to come forward with competent evidence to rebut the presumptions and to otherwise show that there is a material issue of fact or suffer summary judgment in favor of the defendants. Accord, Locke v. Stuart, supra.

The presumptions that the tax assessor properly and in good faith performed his statutory duty is so strong that the Florida Supreme Court in District School Board of Lee County v. Askew, supra, held invalid F.S. §236.07(8) which purported to authorize the auditor-general, with regard to funding state educational institu-

---

beneficiary asserted that she was not required "to disclose her case in advance of trial at which she might produce evidence to controvert the statutory presumption." The trial court granted summary judgment in favor of the defendant, which was affirmed on appeal upon the theory that since the "opposing party did not come forward with any countervailing proof, the movant was entitled to summary judgment," saying —

"In the present case we have from the plaintiff not even a denial of the basic facts, but only in effect an assertion that at trial she may produce further evidence, which she is now holding back, to controvert the legal deduction from the New York statute and decisions that the conceded misrepresentations of the application are material. If one may thus reserve one's evidence when faced with a motion for summary judgment there would be little opportunity 'to pierce the allegations of fact in the pleadings' or to determine that the issues formally raised were in fact sham or otherwise unsubstantial. It is hard to see why a litigant could not then generally avail himself of this means of delaying presentation of his case until the trial. So easy a method of rendering useless the very valuable remedy of summary judgment is not suggested in any part of its history or in any one of the applicable decisions." Supra, at 405-406.

tions, to conduct a ratio study comparing a county's tax assessment roll with the purported full value of the county's taxable property. By enactment of §236.07, the legislature had chosen to ignore the findings of the tax assessor completely, and to rely on a ratio study prepared by the auditor-general to determine allocation of state educational funds. The court held that the tax assessor was presumed to have performed his statutory duty, and despite the concurrent presumption that the auditor-general, as a public officer, would correctly perform his duties —

> "To rely on the findings of the auditor-general, as required by Fla. Stat. §236.07(8), ignoring the official assessment, is to negate the discretion granted to the assessors, the discretion necessary to the job, attendant to all educated estimates, and uniformly recognized in the opinions of this Court. We conclude that a finding by the auditor-General different from that reached by a county tax assessor is, therefore, insufficient to override the official assessment in the absence of a showing that the official assessment represented a departure from the requirements of law and not merely the differences of opinion to be expected when experts approach the subjective businesss of assessing property." Supra, at 277.

In determining whether a genuine issue of material fact exists, the court is limited to reviewing the record as it exists at the hearing on the motion for summary judgment. Auerbach v. Alto, 281 So.2d 567 (3d D.C.A. Fla. 1973); Swift v. Century Insurance Co. 264 So.2d 88 (3d D.C.A. Fla. 1972); Brady v. Zimmerman, 246 So.2d 637 (4th D.C.A. Fla. 1971); Page v. Staley, 226 So.2d 129 (4th D.C.A. Fla. 1969); Turner Produce Company, Inc. v. Lake Shore Growers Cooperative Association, 217 So.2d 856 (4th D.C.A. Fla. 1969), writ discharged, 228 So.2d 276 (Fla. 1969); Settecasi v. Board of Public Instruction of Pinellas County, 156 So.2d 652 (2d D.C.A. Fla. 1963). In addition, on motion for summary judgment, factual issues may not be created by reference to matters which at trial would be inadmissible in evidence. Leaseco, Inc. v. Bartlett,[6] 257 So.2d 629 (4th D.C.A. Fla. 1972); Ham v. Heintzelman's

---

6. In Leaseco, Inc. v. Bartlett, supra, the appellate court affirmed the final judgment entered in behalf of the plaintiff in an action arising out of an automobile accident. The appellants assigned as error the granting of plaintiff's motion for partial summary judgment with regard to whether the appellant owned the subject truck which was involved in the accident. In support of his motion for partial summary judgment, the plaintiff introduced an authenticated written document titled "Lease Agreement" which on its face, clearly identified the appellant as the owner of the subject truck. On appeal the appellant asserted that extrinsic factual issues existed with regard to the intent of the parties, thus

Ford, Inc.,[7] 256 So.2d 264 (4th D.C.A. Fla. 1971); Visingard v. Thorne, 178 So.2d 135 (3d D.C.A. Fla. 1965).

Therefore, in light of the above, what has the plaintiff introduced in the way of admissible competent evidence to rebut the presumptions and the averments in the assessor's affidavit and deposition with regard to its claim of intentional discrimination? In answer to interrogatory 69 propounded March 21, 1974, the plaintiff stated —

"69. Do you claim that the assessment of the improvements and/or land in question was the result of systematic, deliberate, intentional discrimination on the part of the assessor? If so, please state the facts or circumstances relied upon in support of your allegations.

"I do not know except that I feel that the result is incorrect."

Assertions of lack of knowledge do not generate issues of fact. Turner Produce Company, Inc. v. Lake Shore Growers Cooperative Association, supra. See footnote number 4, supra. As the court stated in Turner Produce Company, Inc. v. Lake Shore Growers Cooperative Association, supra, an issue of a material fact "is not created from vapors in the atmosphere." Supra, at 861.

The subjective opinions or "feelings" of the plaintiff are not admissible in evidence and they are of no probative value. Accord, Howland v. Cates, 43 So.2d 848 (Fla. 1949). The court stated in

---

precluding the granting of partial summary judgment. The appellate court stated —

"Obviously, if these extrinsic matters had been proper evidence bearing upon the intention of the parties to the transaction, factual issues would have existed. But all such extrinsic evidence which sought to contradict, vary or modify the complete and unambiguous written agreement between the parties was clearly inadmissible under the well-established parol evidence rule, no extended discussion of which need be had here. See generally 13 Fla. Jur., Evidence, §382, et seq. On motion for summary judgment factual issues may not be created by reference to matters which at trial would be wholly inadmissible in evidence. Page v. Staley, Fla. App. 1969, 226 So.2d 129; Lake v. Konstantinu, Fla. App. 1966, 189 So.2d 171; and Evans v. Borkowski, Fla. App. 1962, 139 So.2d 472." Supra, at 632.

7. In Ham v. Heintzelman's Ford, Inc., supra, the court stated —
". . . an affidavit predicated upon inadmissible hearsay does not comply with the summary judgment rule and cannot be utilized in support of or in opposition to summary judgment." Supra, at 268.

Hurricane Boats, Inc. v. Certified Industrial Fabricators, Inc., 246 So.2d 174 (3d D.C.A. Fla. 1971), that an affidavit in support of the summary judgment may not be based upon factual conclusions or conclusions of law. See also, First Mortgage Corporation of Stuart v. de Give, 177 So.2d 741 (Fla. 1965).

Therefore, the court finds that the plaintiff's answer to interrogatory number 69 does *not* generate a genuine material issue of fact.

Moreover, although the plaintiff has indicated in answer to supplemental interrogatory number 3 propounded on March 21, 1974, that he has retained Dean Edward Fox to conduct a sales assessment ratio study, and that he would probably consider retaining David Bishop for the purpose of property evaluation, nevertheless, under the authority of Harvey Building, Inc. v. Haley, 175 So.2d 780 (Fla. 2965), and Hardcastle v. Mobley, 143 So.2d 715 (3d D.C.A. Fla. 1962), the court finds that material issues of fact cannot be inferred from evidence which *could* be presented at trial. Page v. Staley, 226 So.2d 129 (4th D.C.A. Fla. 1969).

For the purpose of defendants' motion for partial summary judgment, the court must assume that Dr. Fox is accurate in his opinion that most of the taxable property in Dade County was assessed in 1973 at 64.33% of fair market value, and further, the court must assume that the plaintiff is accurate in asserting that the subject property was assessed in excess of 64.33% of its fair market value. But, in order to recover for the damage suffered, the plaintiff must also prove that it was the *result* of the actions of the defendants. The plaintiff, in the case at bar, failed to reveal any genuine issue of material fact with regard to whether the assessor *intentionally* and systematically employed a *method* of assessment which *resulted* in the damage allegedly suffered by the plaintiff. The assessor is presumed to have acted property and in good faith (citations omitted). This presumption is buttressed by the testimony of the assessor given at his deposition upon oral examination. He repeatedly stated that he did not intentionally or otherwise employ a method of assessment with regard to the subject property which resulted in the plaintiff having to bear a greater share of its just tax burden (see pp. 3, 7, 8 and 9 of Alf H. Blake's deposition taken July 15, 1974, and which is attached to plaintiff's affidavit of counsel pursuant to Rule 1.510(f).

As with other *intentional torts,* proof of damage suffered, absent proof of intention, does not prove a cause of action. Although the record, if believed, reveals that the plaintiff is bearing more than his share of the tax burden, the plaintiff has failed to reveal issues

of fact with regard to the *method* employed by the assessor in arriving at the assessment, the *intentions* of the assessor, or even that the assessor's actions, whether intentional or unintentional, *resulted* in the alleged damage suffered by the plaintiff.

There is good reason to require that the plaintiff must prove that the damage that it suffered was a result of the intentional actions of the tax assessor. Take for instance the situation where a taxpayer refuses to provide the tax assessor with requested data concerning a property's income. The assessor is obliged to consider the income generated from the property if adequate data is available. If the assessor, in good faith, attempts to consider the income generated from the property in arriving at his assessment, where the taxpayer has refused to produce the requested income information, the court may not invalidate the assessment just because it later develops at trial upon actual income figures being made available that the taxpayer's information would belatedly change the result. Palm Corporation v. Homer, 261 So.2d 822 (Fla. 1972). As the court stated in that case —

> "The taxpayer may, however, suffer the consequence of unreasonably withholding such information. He can not in a later suit to change a valid assessment, benefit from his wrongful refusal by belatedly offering his income information, provided the assessor, after reasonably demanding such information and being refused, has in good faith applied such general income data as was applicable and available to him." Supra, at 823.

Therefore, it becomes apparent that a taxpayer must prove more than that it has suffered damage, or that the assessment is incorrect — it must prove that the damage suffered was a *result* of the intentional acts of the assessor. Mere unintentional errors in judgment are presumed corrected by the board of tax adjustment. Accord, City of Tampa v. Palmer, 105 So. 115 (Fla. 1925).

The defendants submitted and the court finds that the plaintiff failed to reveal a genuine material issue of fact with regard to whether the tax assessor *"intentionally* and systematically pursued a *method* of assessment which *resulted* in the violation of the principles of equality and uniformity in taxation." The plaintiff, on the other hand, argued that it need not, despite the allegations in its own complaint, prove that the assessor intentionally or systematically did anything — but that it need only prove that the subject property was taxed at a greater percent of its fair market value in comparison to all or most of the other taxable property in Dade County.

The defendants asserted and the court holds that in order to recover based upon a claim of intentional tax discrimination, the plaintiff must prove not only that it has been damaged by having to bear a greater share of its just tax burden, but that the damage suffered must be a result of the tax assessor's intentional and systematic pursuit of a method of assessment which resulted in the violation of the principles of equality and uniformity in taxation. The plaintiff asserted, however, that it must only prove that it has been damaged.

In support of its position that the plaintiff need only prove that all or most of the property in Dade County is assessed at a lower percentage of its fair market value when compared to the subject property, counsel for the plaintiff relies upon Southern Bell T & T Co. v. County of Dade, 275 So.2d 4 (Fla. 1973). In that case the petitioner, plaintiff below, appealed from the decision of the Third District Court of Appeal, which had affirmed the trial court's order which denied petitioner relief. The petitioner had filed suit against Dade County, alleging that the 1967 assessment of its tangible personal property was illegal and discriminatory. The petitioner alleged that the assessor had systematically assessed its property at a higher percent of its fair market value than he had assessed the property of other taxpayers. To prove the assessment level of real property in Dade County, the petitioner introduced evidence of three assessment sales ratio studies. The three studies reached substantially the same conclusions — real property was assessed at approximately 82% of fair market value. The petitioner had alleged and the respondents had admitted that the subject property was assessed at 100% fair market value. Although the respondents offered no evidence to impeach or to contradict the sales ratio studies, the circuit court denied relief which was affirmed by the Third District Court of Appeal upon the ground that the studies were *not* prima facie evidence of market value.

At trial the respondents argued that the *sales price* does not necessarily evidence the property's fair market value; and in addition, even if it did, the sales price may not be inferred from documentary stamps.

The Supreme Court of Florida reversed and remanded the cause and held that "the price at which property is sold as indicated by documentary stamps on the instrument is prima facie evidence of its value." Supra, at 9.

Thus, the Supreme Court in that case held that evidence of a statistically reliable sales ratio study based upon the price at which property is sold as indicated by documentary stamps on the instrument is admissible with regard to the initial issue of whether the

taxpayer had suffered damage by having to bear more than its just share of the tax burden. It is extremely significant that the court did not address itself to nor even mention the burden required in order to overcome the assessor's presumption of correctness and good faith. The court addressed itself to the *evidentiary* question with regard to what the taxpayer must prove in order to show initially that it had been damaged.

The narrow holding in *Southern Bell T & T Co.* is apparent in light of the subsequent Supreme Court opinion in District School Board of Lee County v. Askew, 278 So.2d 272 (Fla. 1973), which was rendered on April 4, 1973, — three months after *Southern Bell.* Southern Bell T & T Co. v. County of Dade, accordingly, must be read in light of the subsequent case of District School Board of Lee County v. Askew. If a sales ratio study prepared by the auditor-general, which is presumably correct, is insufficient to rebut the tax assessor's presumption of correctness, then certainly, a sales ration study prepared by an individual taxpayer is likewise insufficient to rebut the tax assessor's presumption of correctness.

It should be mentioned in passing that the assessor is not required by law to conduct a sales ratio study in order to verify his actions, which are presumed to be correct. The plaintiff may attempt to employ such a study to show that the subject assessment is discriminatory, but the assessor is not required to perform such a study. The fact that the assessor did not perform a sales ratio study does not generate a material issue of fact with regard to his intentions.

The record when viewed in a light most favorable to the plaintiff fails to reveal a genuine issue of material fact with regard to the method employed by the assessor and with regard to the intentions of the assessor. The record fails to reveal a material issue of fact with regard to whether the assessor's actions resulted in the alleged damage to the plaintiff. The assessor is presumed by law to have acted correctly and in good faith. With this, there is no material issue of fact and defendants are entitled to partial summary judgment on the issue of intentional tax discrimination.

It is therefore ordered and adjudged —

(1) That defendants' motion for partial summary judgment with regard to plaintiff's claim of intentional tax discrimination is granted, and, accordingly, the plaintiff shall take nothing by its claim of intentional tax discrimination.

(2) That defendants' oral motion to strike the affidavit of Bennett Lifter is denied.