OWEN, Chief Judge.
Involved here is a question of whether the lessee of a motor vehicle was entitled to coverage under an automobile liability insurance policy issued by appellee-Transit Casualty Company to the lessor of the vehicle.
This case is the sequel to Leaseco, Inc. v. Bartlett, Fla.App.1971, 257 So.2d 629 (cert. den. Fla. 1972, 262 So.2d 447). We there affirmed the judgment which Mr. Bartlett had recovered in his suit for the wrongful death of his wife arising out of the negligence of Bobby Dale Bowman while operating a truck which had been leased from the owner, Leaseco, Inc. The judgment was against the Bowmans,[1] Bel-ford Trucking Company, Inc. under whose ICC certificate Bowman had been operating, Leaseco, Inc. as the owner of the ve- *609 hide, and Transit Casualty Company as Leaseco’s liability insurance carrier.
In the course of the litigation, Belford Trucking Company had cross-claimed against Bowman on an indemnification theory, and ultimately recovered a judgment against Bowman in the amount of $34,794.68, which represented the amount Belford Trucking Company had contributed toward payment of the Bartlett judgment plus its defense costs incurred in the action. Thereafter, in an attempt to collect that judgment, Belford Trucking Company brought the present garnishment action against Transit Casualty Company on the theory that Bowman was an insured under the automobile liability insurance policy which Transit Casualty Company had issued to Leaseco, Inc., as the named insured. The issues made in the garnishment action were tried by the court without a jury, and it is from the final judgment in favor of the garnishee, Transit Casualty Company, (which inferentially found that Bowman was not an insured under Transit’s policy) that Belford Trucking Company brings this appeal.
The insurance policy involved in this case was not a standard policy, but rather was custom made by means of a series of endorsements attached to the declaration page and a standard policy jacket. Because Leaseco’s buisiness consisted of leasing over-the-road equipment on both a long term and short term basis, the policy was written as a gross receipts policy covering all of Leaseco’s vehicles without specifically describing them. The underwriter determined the rate per hundred dollars of gross receipts which was required to be charged as a premium for the risk, and after payment of an advance premium based on estimated gross receipts, the policy required periodic reporting of gross receipts and periodic audits.
Of particular importance in determining the issue before us are the following portions of Endorsements No. 9 and No. 10:

Endorsement No. 9:

“1. DEFINITION OF INSURED: Subject otherwise to the provisions of the Definition of Insured agreement of the policy.
(a) the insurance with respect to any driverless automobile applies only to the Named Insured and rentee [2] and any employer or employee of the rentee.

“3. PREMIUM: the premium stated in the schedule is an estimated premium only. Upon termination of the policy, the earned premium for such automobiles shall be computed by the application of the receipts rates stated in the schedule to the amt. of gross receipts during the policy period from all such automobiles, but such premiums shall not be less than the minimum premium stated in the schedule. If the earned premium thus computed exceeds the estimated advance premium paid for such automobiles, the named insured shall pay the excess to the co., if less, the co. shall return to the named insured the unearned portion paid by such ins. The words ‘gross receipts’ means the total amt. to which the names [iic] insured is entitled for the rental to others of driverless cars during the policy period, hut shall not mean the amt. derived from rental to others who furnish their own primary ins. as provided in sub-paragraph 1 of endorsement # 10; the named insured shall maintain evidence of such primary ins. for the company’s inspection. (Emphasis added.)
jft jfc ‡
“7. DEFINITION: ‘Driverless Automobile’ means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto) while rented without the named ins. or a *610 chauffeur of the Named Ins. in attendance.”

Endorsement No. 10:

“It is agreed that such insurance as is afforded by the policy for Bodily Injury and for Property Damage Liability applies with respect to any automobile rented to others for which the lessee is providing primary liability [insurance] subject to the following provisions:
“1. The insurance applies only while the automobile is rented without the named insured or a chauffeur of the named insured in attendance, under a written contract which provides that the lessee shall maintain in effect, bodily injury liability and property damage liability insurance covering the interests of the named insured on a direct primary basis at limits of liability not less than: $100,000.00 — Each Person — Bodily Injury.”

“Evidence of such insurance shall <• be furnished the named insured by means of Certificate of Insurance issued by the lessee’s insurer and which certificate shall be maintained by the named insured for the Company’s inspection.
“2. the insurance applies only to the named insured while the automobile is so rented.
# ‡ ‡ >{; ;}c
“4. The insurance shall be excess over any other valid and collectible insurance available to any insured for bodily injury and for property damage liability.” (Emphasis added.)
While on first reading the above-quoted portions of Endorsements No. 9 and No. 10 may seem obscure, we think that upon reflection the general underwriting intent with respect to driverless automobiles is -plain. Stated in simple terms, the insurance afforded by the policy applied to Lease-co, Inc. and to its lessee, unless the lessee pursuant to the terms of his written lease agreement furnished and maintained in effect his own liability insurance in certain specified amounts. If the lessee did furnish his own liability insurance, then Endorsement No. 10 was effective to make the Transit insurance applicable only to the named insured, and then only as excess over any other valid and collectible insurance. If the lessee did not furnish his own liability insurance, then the restrictive nature of Endorsement No. 10 did not become effective and the lessee of a driver-less automobile remained an insured under the definitions as set forth in Endorsement No. 9.
It is readily apparent that under this type of policy, Transit would never know from day to day to which particular lessee its policy extended. It is equally as apparent that this made no difference to Transit, as clearly it was willing to accept as a risk any or all of such lessees as did not provide their own liability insurance, the only requirement being that the revenue received by Leaseco from such lessees be included in the gross receipts upon which the final premium would be calculated.
Bowman leased the truck from Leaseco under a written lease agreement which required the lessee to procure and maintain in force liability insurance in amounts which fully complied with the requirement set forth in Endorsement No. 10. Unfortunately, in spite of having agreed to procure and maintain in effect such liability insurance, Bowman failed to do so, a fact which was known to and acquiesced in by Leaseco. Thus, the leased vehicle was not an “automobile rented to others for which the lessee is providing primary liability insurance”. Endorsement No. 10 did not apply, and Bowman, as the lessee of a driver-less automobile, remained an insured under the definition as set forth in Endorsement No. 9.
*611 We are not unmindful of the fact that Leaseco did not include in its report of gross receipts the amount which it derived from the lease to Bowman, as a consequence of which Transit never received a premium from Leaseco for coverage on this particular vehicle. Nonetheless, Lea-seco’s failure to include this revenue as part of its reported gross receipts (due no doubt to the position it had originally taken to the effect that the vehicle had been sold to Bowman rather than merely leased to Bowman, see 257 So.2d 629, at 631), remains a matter between Leaseco and Transit Casualty Company and well may be a matter for appropriate adjustment on audit just as would be the case where any other rental revenue was improperly omitted from the report of gross receipts. Nor are we unmindful of the fact that by the lessee’s breach of the lease requirement to furnish and maintain insurance, the lessee is receiving from Transit the coverage the lessee failed to provide for itself. This, however, is a matter which Leaseco could (and should) have controlled, and its failure to insist upon full compliance by the lessee simply has the effect of placing on Leaseco the burden for the premium.
We determine here that at the time of the accident giving rise to this litigation, Bowman was an insured under the omnibus clause of the policy Transit Casualty Company had issued to Leaseco, and consequently appellant was entitled to a judgment against Transit Casualty Company in this garnishment action. This decision makes it unnecessary for us to decide the other issues raised by appellant on this appeal.
The judgment is reversed and this cause remanded for entry of a judgment consistent herewith.
Reversed and remanded.
WALDEN and DOWNEY, JJ., concur.

. George Bowman, Jimmy Bowman and Bobby Dale Bowman, d/b/a George Bowman & Sons, referred to collectively herein simply as Bowman.

. The term “rentee and lessee” are used interchangeably in the policy.